## COCA–COLA CO. v. CARLISLE BOTTLING CO.

District Court, E. D. Kentucky. June 9, 1927.

Trade-marks and trade-names and unfair competition ⬳95(3)—Preliminary injunction to restrain use of "Roxa-Cola," as infringement of trade-mark "Coca-Cola," denied.

Preliminary injunction denied to restrain infringement of trade-mark "Coca-Cola" by defendant, by use of the name "Roxa-Cola" for a similar product, where such use has been known to complainant for more than 17 years before any objection was made.

In Equity. Suit by the Coca-Cola Company against the Carlisle Bottling Company. On motion for preliminary injunction. Denied.

Candler, Thomson & Hirsch, of Atlanta, Ga., and Allen, Botts & Duncan, of Lexington, Ky., for plaintiff.

Leslie Morris, of Frankfort, Ky., for defendant.

ANDREW M. J. COCHRAN, District Judge. This suit is before me on motion of plaintiff for preliminary injunction. It is a suit for infringement of its trade-mark, "Coca-Cola," and for unfair competition. The injunction sought is against continuing to infringe and compete unfairly. It is claimed that plaintiff's trade-mark is infringed by the trade-mark "Roxa-Cola," applied by defendant to its goods. The unfair competition complained of consists in using such trade-mark on goods of the same color and consistency as plaintiff's and substituting and passing off defendant's goods as the

goods of plaintiff. Point is made in argument of the likeness of the crowns used on defendant's bottles to those used on plaintiff's, but no mention of this is made in the bill. It is not claimed that there is any substantial similarity between the bottles used by the two.

Defendant and its predecessor began business in 1906. During all that time they have sold the same goods, in the same bottles, with the same crowns, and under the same trade-mark. This has been done to plaintiff's knowledge. Defendant's plant is located at Carlisle, county seat of Nicholas County, in this district, and its business seems to be confined to that and two or three adjoining counties. Plaintiff made no complaint of defendant's conduct until the spring of 1923. It then did so through its general counsel, Candler, Thomson & Hirsch, of Atlanta, Ga. The burden of their complaint was that some of the retail dealers in defendant's vicinity were substituting its product for plaintiff's. If there was any complaint that defendant's trade-mark was an infringement of plaintiff's, it was not stressed. Some correspondence was had between them and defendant. Their last letter was dated March 19, 1923, and they called therein for answer to their previous letter of March 9, 1923. On March 16, 1923, plaintiff, by Charles V. Rainwater, its secretary and treasurer, wrote to defendant the following letter, to wit:

"The Coca-Cola Bottling Company,

"General Office, 231–232 and 233 Candler Building.

"Coca-Cola.

"Address all communications to Chas V. Rainwater, secretary and treasurer.

"Atlanta, Ga., March 16, 1923.

"The Carlisle Bottling Works, Carlisle, Ky.—Gentlemen: Attention Mr. G. C. Myers. Answering further your letter of the 6th inst., I want to advise that I have had a conference with Messrs. Candler, Thomson & Hirsch in regard to the correspondence which they have had with you covering certain practices in your city.

"It appears from this conference that the complaint of Messrs. Candler, Thomson & Hirsch in behalf of their client is because of unfair competition, due to the practice of certain dealers in your city substituting your product for Coca-Cola, and further they have evidence which indicates that you yourself have filled orders with your product when Coca-Cola was called for.

"It appears from your correspondence that you are under the impression that the evidence gathered by Messrs. Candler, Thomson & Hirsch has come to them through some competition. This I find is not the case. The evidence they believe is bona fide and was secured in a very reliable manner.

"I feel that, if you can assure Candler, Thomson & Hirsch that no further practice of this kind will be permitted by you in your own plant, and that you will use every effort in discouraging the dealers in doing so, that you will have not further difficulty. You must realize that, when you put into the hands of a dealer a product that enables him to unfairly compete with Coca-Cola, you are a party to the transaction.

"I trust that you will consider this matter very carefully, and if you can write a letter of assurance to Messrs. Candler, Thomson & Hirsch on these points of unfair competition, I believe that you will not have any further difficulty, as stated.

"Yours very truly,

"The Coca-Cola Bottling Company,

"By Chas. V. Rainwater, Sec. & Treas."

"RG

It is stated therein that the complaint of plaintiff's counsel against defendant, which the writer has arrived at from conference with them, was "unfair competition, due to the practice of certain dealers in your city substituting your product for Coca-Cola, and further they have evidence which indicates that you yourself have filled orders with your product, when Coca-Cola was called for."

There is no intimation therein that it was claimed that defendant was infringing plaintiff's trade-mark. The letter concludes with these words:

"I feel that, if you can assure Candler, Thomson & Hirsch that no further practice of this kind will be permitted by you in your own plant, and that you will use every effort in discouraging the dealers in doing so, that you will have no further difficulty. You must realize that, when you put into the hands of a dealer a product that enables him to unfairly compete with Coca-Cola, you are a party to the transaction.

"I trust that you will consider this matter very carefully, and if you can write a letter of assurance to Messrs. Candler, Thomson & Hirsch on these points of unfair competition, I believe that you will not have any further difficulty, as stated."

The defendant did write plaintiff's general counsel a letter giving such assurance on March 21st, which, it said, was in reply to their letter of March 19th. With this let-

ter the correspondence ceased; and there is no accounting for this, except on the basis that the assurance was satisfactory, not only to plaintiff, but to its general counsel.

This suit was brought April 15, 1926. The evidence introduced by plaintiff on the motion consists of the affidavits of two of its employees as to purchases the latter part of January, 1923, from two retail dealers in Carlisle of defendant's goods, which were furnished to them in response to a call for Coca-Cola, without any intimation that those goods were not the goods called for, which purchases preceded the complaint in the spring of 1923, and the affidavits of two other of its employees of purchases in July, 1925, from defendant, numerous retail dealers in Carlisle, and one or two such dealers in Millersburg, a town in Bourbon county, adjoining Nicholas. This evidence is completely contradicted by the affidavits of the persons who are charged in plaintiff's affidavits to have made the sales, filed by defendant.

On the question as to whether defendant's trade-mark is an infringement of plaintiff's, I do not feel sure that it is, notwithstanding the authorities cited and relied on by plaintiff. In the case of Coca-Cola Company v. Koke Company, 254 U. S. 143, 41 S. Ct. 113, 65 L. Ed. 189, the Supreme Court said: "The product [i. e., plaintiff's], including the coloring matter, is free to all who can make it, if no extrinsic deceiving element is present."

Of course, a product which is not exactly or substantially plaintiff's, though colored exactly as plaintiff's, is free to all who can make it, if no such element is present. And possibly the presence in a trade-mark used by another to designate such product made by him of the word "Cola" or "Kola" is not such a deceiving element, if it is qualified by another word distinct from "Coca," and there is no other element of unfair competition in such person's method of doing business. I cannot take position on this question without a pretty thorough consideration of the numerous decisions relating to the infringement of trade-marks. What I am struck with is the fact that, at least for 17 years prior to the spring of 1923, plaintiff, though knowing of it, never made any complaint of defendant's use of the trade-mark "Roxa-Cola." If its general counsel then made such complaint, it is not to be readily gathered from their letter, and at least it was not stressed by them.

Then the plaintiff, through Rainwater, its secretary and treasurer, stated that their sole complaint was the furnishing of defendant's goods for plaintiff's by retail dealers, and that they would be satisfied if defendant would give assurance that there would be no further such substitution, and upon defendant giving that assurance they were satisfied. The only reference plaintiff's counsel make to this letter of Rainwater is to claim that it is an assumption that Rainwater was an official of plaintiff, and that there is no evidence showing he was in any way, manner, or form connected with plaintiff. I do not think that this letter can be disposed of in this summary fashion. The circumstances evidence that he was what he claimed to be. The conduct on plaintiff's part is very strong evidence that plaintiff itself has not looked, and does not look, upon the words "Roxa-Cola" as an infringement of its trade-mark.

Then as to the other elements of unfair competition. The plaintiff, before the bringing of this suit, never complained of defendant's crowns. It did not complain of them in its bill. Before then its sole complaint was limited to retail dealers furnishing defendant's goods for plaintiff's when the latter were called for, and in its bill its complaint was limited thereto and the infringement of its trade-mark. Possibly the complaint of such substitution involved all elements of unfair competition. As to such substitution, the plaintiff makes quite a formidable case; but it is met by an equally formidable case on defendants' part. It is open to say that it is a more formidable case. It would seem to be certain that one side or the other is lying, and I am loath to find that either is doing so. And, furthermore, if plaintiff's witnesses are to be believed, there is not an honest person dealing in defendant's goods; for all alike, when plaintiff's goods are called for, furnish defendant's. It is to be noted that there is no evidence of an ordinary purchaser ever having been deceived. Possibly it is a difficult matter to find evidence of this sort, if such exists, and plaintiff was driven to the necessity of finding out whether defendant was treating it unfairly in the way it did. This it had a right to do.

In view of these circumstances, I do not feel justified in granting plaintiff a preliminary injunction, and the case will have to go to a final hearing. I can say this, however, that as at present advised I would be disposed to grant an injunction against defendant's further substituting its goods for plaintiff's, and requiring it to take such steps as might be deemed advisable to prevent retail dealers from doing so. If defendant and its retail dealers are not making such substi-

tution, it can do them no harm to grant such an injunction; whereas, if they are, plaintiff is entitled to it. Possibly, also, defendant should be required to change its crowns. As to the use of the trade-mark, I am not disposed to grant an injunction against its continued use under the particular circumstances of this case.

The motion for a preliminary injunction is denied.