In 1901 Charles S. Merton established a hat and cap business, and at that time adopted the word "Merton" as a trade name. In 1905 the business was incorporated under the name of Charles S. Merton Company, and that corporation is the present complainant in this suit. The trade name of "Merton" has been featured in the business from the beginning down to the present time. In the quarter of a century or more that has intervened the business has grown from a basis of about $6,000 for the first year to approximately $400,000 per year at this time; and complainant now has a corps of salesmen covering all parts of the country. During all this period Charles S. Merton, the founder of the business, has been the guiding spirit, and has directed and *Page 381 
controlled its affairs. In 1910 complainant and its successors were granted a trade-mark for hats and caps by the United States authorities, in which the original featuring of the name "Merton" was carried out, and is the paramount factor. In 1916 complainant incorporated in the State of New Jersey and acquired the business, good will, trade-marks and assets of its predecessor (incorporated in 1905), which was a corporation of the State of New York. It has since conducted its business as a corporation of this state, and asserts that it has built up a high and enviable reputation among the merchants and purchasing public, so that the name "Merton," as used in connection with hats and caps, has come to be understood by the public as signifying the goods of the complainant. Several witnesses who are nationally prominent in the hat and cap trade also testified that complainant is widely known as a manufacturer of cloth headwear of the highest standard of quality. Complainant contends, therefore, that the name "Merton" has acquired a fixed and widespread secondary meaning in relation to hats and caps, in the same manner as the names "Knox," "Dunlap" and "Stetson."
In 1907 Percy Merton, a younger brother of Charles S. Merton, was given employment in the business as an office boy, and later advanced to a position of salesman. A few years later he became a stockholder and director in the corporation of Charles S. Merton Company, continuing in that relation until 1924. Percy Merton became intimately acquainted with the business methods and policies of the complainant, and with its customers; and in the latter part of his connection with complainant he was its sales manager, and had full and complete access to its files and business transactions. In 1922 Percy organized the defendant company, "Percy Merton, Incorporated," in the State of New York. In 1924 his interest in the complainant company was acquired by Charles S. Merton and other stockholders. His income from the complainant company approximated $9,000 per annum. After severing his relations with the complainant company Percy associated himself with Messrs. Levy and *Page 382 
Brankin in the manufacture of hats and caps at Park Ridge, New Jersey; and, as complainant asserts, imitated complainant and complainant's goods in every way; conducting business under the name of "Percy Merton, Incorporated."
Complainant contends that through defendant's use of the name "Merton" it was enabled to palm off its goods as the goods of the complainant, to the extent of $56,000 in about one year's business.
Complainant further contends that the parties to this suit are the only "Mertons manufacturing identically the same merchandise, and that they are wholly competitive; that the complainant is the pioneer, and is the school in which Percy Merton served his apprenticeship, received his training, and from which he derived all of the secrets of complainant's business; and that his alliance with Levy and Brankin in the corporation which assumed Percy Merton's name as its title, is obviously for the purpose of deceiving and misleading the public in the purchase of defendant's goods as the product of complainant. The defendant naturally seeks to justify its position as not interfering with the business of complainant as indicated, and resists the application of complainant to enjoin it as prayed in the bill of complaint. On the application for preliminary restraint an order was made by this court on February 15th, 1926, which provided that "the defendant and its agents and servants be, and they are hereby enjoined, and commanded henceforth, and until the further order of this court, from continuing the use of the word or name `Merton' in its corporate name or title, or in connection with its manufacturing or selling; and that if the said defendant desires to do business under the said name, that it shall cause to be stamped upon all of its merchandise or advertising by postal, placard, circular, card, letter or other writing, or, by its labels, trade-mark, or other medium, featuring the name or word `Merton,' the words `Not connected with Charles S. Merton 
Co.'"
In my judgment, the preliminary restraint should be made permanent and I will advise a decree accordingly. *Page 383