## PHILLIPS v. THE GOVERNOR & CO. OF ADVENTURERS OF ENGLAND TRADING INTO HUDSON'S BAY.
### No. 7800.

Circuit Court of Appeals, Ninth Circuit.
Nov. 4, 1935.

Fred Horowitz, of Los Angeles, Cal., P. N. McCloskey, of San Bernardino, Cal., and G. Gunzendorfer, of Reno, Nev., for appellant.

Chas. E. Townsend, of San Francisco, Cal. (H. H. Byrne, of Washington, D. C., and Thatcher & Woodburn, of Reno, Nev., of counsel), for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Plaintiff seeks, by this suit, a permanent injunction against defendant, restraining the latter from in any way advertising or conducting business under the name of "Hudson Bay Fur Company" or any colorable imitation thereof, or any similar name calculated to deceive the public and to create the impression that the defendant is in any manner identified or affiliated with plaintiff. Plaintiff also asked damages, but no evidence was introduced in support thereof. Upon trial in the court below, plaintiff prevailed, and from the decree defendant appealed.

Charles II granted a royal charter to "The Governor and Company of Adventurers of England Trading into Hudson's Bay" in May, 1670, commonly known as "Hudson's Bay Company." For many years, this corporate plaintiff has maintained trading posts throughout a part of Canada for the purpose of purchasing furs from trappers. These furs, most of which are raw furs, are shipped to London, England, where they are sold at auction in lots. Plaintiff also sells blankets under the name "Hudson's Bay Point Blankets," tobacco, and tea. Although plaintiff maintains no retail stores in the United States nor does it sell these articles in the United States, such products are sold in the United States, mainly through jobbers. Plaintiff now has about three hundred stores and trading posts in Canada.

Plaintiff sells fur and other garments in its stores in Canada, but it does not appear that it manufactures any of the fur garments, but purchases them for resale, on the open market. These garments may or may not be made from the furs sold by plaintiff at auction in London. Plaintiff corporation has existed for more than 250 years, and during its existence it has come to be known as a great fur producing and trading establishment, and has acquired a recognized reputation for reliable business dealing.

Defendant maintains a retail store in Reno, Nev., known as the "Hudson Bay Fur Co.," which store under that name has been continuously in business since 1919. In some of his advertising, in addition to the name "Hudson Bay Fur Co." he has added "Fred Phillips, Prop.," both in newspaper advertisements and on billboards. Since 1927, the sign above the store immediately under the name "Hudson Bay Fur Co." there has been and is in smaller letters the following: "Not connected with the Hudson Bay Co. of Canada." A great many of defendant's advertisements contain only the name "Hudson Bay Fur Co."

At the outset, we must say that, although plaintiff is a citizen of a foreign country, it is entitled to protection in the United States of America against unfair competition, if there is unfair competition, by virtue of a treaty between a great many countries, including the United Kingdom of Great Britain and Ireland and of the British territories beyond the seas, and the United States of America, as modified in 1911, which treaty among other things provided that the contracting parties constituted a state of union, and that: "All the contracting countries agree to assure to the members of the union an effective protection against unfair competition." (38 Stat. 1663, art. 10½.)

There was also a treaty entered into between the United States and Great Britain on October 24, 1877 (20 Stat. 703), wherein it was provided: "The subjects or citizens of each of the contracting parties shall have, in the dominions and possessions of the other, the same rights as belong to native subjects or citizens, or as are now granted or may hereafter be granted to the subjects and citizens of the most favoured nation, in ev-

erything relating to property in trademarks and trade-labels."

Plaintiff has heretofore obtained injunctions against other defendants restraining the latter from using the name used by defendant here. Two of these cases are: Buckspan v. Hudson's Bay Co. (C. C. A. 5) 22 F.(2d) 721; The Governor, etc., Trading into Hudson's Bay v. Hudson Bay Fur Co. (D. C. Minn.) 33 F.(2d) 801.

■ It is first contended by defendant that since plaintiff has a geographical name, it is not entitled to the exclusive use thereof, and for that reason there can be no unfair competition.

In Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 673, 21 S. Ct. 270, 273, 45 L. Ed. 365, it is said:

"And the general rule is thoroughly established, that words that do not in and of themselves indicate anything in the nature of origin, manufacture, or ownership, but are merely descriptive of the place where an article is manufactured or produced, cannot be monopolized as a trademark. * * *

"But it is contended that the name 'Elgin' had acquired a secondary signification in connection with its use by appellant, and should not, for that reason, be considered or treated as merely a geographical name. It is undoubtedly true that where such a secondary signification has been acquired, its use in that sense will be protected by restraining the use of the word by others in such a way as to amount to a fraud on the public, and on those to whose employment of it the special meaning has become attached.

"In other words, the manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those and other goods; and protection is accorded against unfair dealing, whether there be a technical trademark or not. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another."

See, also, Scandinavia Belting Co. v. Asbestos & Rubber Works, 169 C. C. A. 87, 257 F. 937 (certiorari denied 250 U. S. 644, 39 S. Ct. 494, 63 L. Ed. 1186); Trappey v. McIlhenny Co. (C. C. A.) 281 F. 23 (certiorari denied 260 U. S. 733, 43 S. Ct. 94, 67 L. Ed. 487); Finchley, Inc., v. Finchly Co. (D. C.) 40 F.(2d) 736; American Products Co. v. American Products Co. (D. C.) 42 F.(2d) 488; 63 C. J. 426, § 116.

It abundantly appears that plaintiff's name has acquired a secondary significance in the kind and quality of its goods, and therefore it is no objection to the issuance of an injunction that its name is geographical.

■ Defendant's second contention is that no injunction should issue, because "Hudson's Bay" is a mere descriptive term and therefore plaintiff is not entitled to the exclusive use thereof. He states that there are cities named "Hudson" and "Hudson Falls"; that there is a "Hudson" river and a "Hudson" motorcar, and that "Hudson" in the fur industry has been used to denote a particular fur, such as "Hudson Seal," "Hudson Bay Sable," and "Hudson Bay Seal." In 63 C. J. 424, § 115, it is said: "Descriptive terms and generic names are publici juris and not capable of exclusive appropriation by any one, but may be used by all the world in an honestly descriptive and non-deceptive manner. * * * Nevertheless, even descriptive and generic names may not be used in such a manner as to pass off the goods or business of one man as and for that of another. Where such words or names, by long use, have become identified in the minds of the public with the goods or business of a particular trader, it is unfair competition for a subsequent trader to use them in connection with similar goods or business in such a manner as to deceive the public and pass off his goods or business for that of his rival * * *."

With respect to this contention it is sufficient to say that since defendant's assumed name has been identified in the minds of the public with the business of plaintiff, the fact that the name is descriptive will not prevent the relief asked. Hygrade Food Products Corporation v. H. D. Lee Mercantile Co. (C. C. A. 10) 46 F.(2d) 771; Richmond Remedies Co. v. Dr. Miles Medical Co. (C. C. A. 8) 16 F.(2d) 598; Barton v. Rexoil Co. (C. C. A. 3) 2 F.(2d) 402, 40 A. L. R. 424, and on rehearing (C. C. A.) 29 F.(2d) 474; Rubber & Celluloid Products Co. v. Star Brush Mfg. Co. (D. C.) 22 F.(2d) 415; 63 C. J. 424, § 115.

974

■ Inasmuch as defendant sells his fur products direct to the retail trade, and plaintiff sells no fur products to the retail trade in the United States, defendant contends that there is no "competition" between them, and therefore there can be no "unfair competition." This court, however, has carefully considered the question in Del Monte Special Food Co. v. California Packing Corporation (C. C. A.) 34 F.(2d) 774, and has held that the two products need not be competitive. Many authorities are there cited, to which may be added the following: Standard Oil Co. of New Mexico v. Standard Oil Co. of Cal. (C. C. A. 10) 56 F.(2d) 973; Wisconsin Electric Co. v. Dumore Co. (C. C. A. 6) 35 F.(2d) 555 (certiorari granted 281 U. S. 710, 50 S. Ct. 333, 74 L. Ed. 1132, and certiorari dismissed 282 U. S. 813, 51 S. Ct. 214, 75 L. Ed. 728); American Products Co. v. American Products Co., supra; Finchley, Inc., v. Finchly Co., supra; Anheuser-Busch, Inc., v. Cohen (D. C.) 37 F.(2d) 393; Armour & Co. v. Master Tire & Rubber Co. (D. C.) 34 F.(2d) 201; 63 C. J. 390, § 100.

The views herein expressed are strengthened by the fact that the law seems to permit a more liberal application of a remedy by injunction in cases of unfair competition, than does the law in cases involving infringement of trademarks. In Scandinavia Belting Co. v. Asbestos & Rubber Works (C. C. A. 2) 257 F. 937, 960, it is said: "The defendant is charged with unfair competition. The law of unfair competition is broader than is the common law or the statute law of trade-marks, so that one may be entitled to relief on the ground of unfair competition who is denied relief under the law of trade-marks." For this reason, decisions involving infringement of trade-marks which are cited by appellant are not persuasive here. We are not here called upon to determine the validity of a trade-mark, but only whether or not there is unfair competition in the use of trade-names.

■ The defendant contends that laches of plaintiff is a bar to the relief sought. There was introduced into evidence a letter written to one Ribner, the then owner of the store in Reno, on behalf of plaintiff, dated June 13, 1927, demanding that the owner cease to do business under the name of "Hudson Bay Fur Company." On June 23, 1927, attorneys for the owner wrote plaintiff's attorney offering a compromise in the use of the name by adding words to show that such firm was not affiliated with plaintiff. June 27, 1927, the attorney for plaintiff replied that he would have to obtain decision on the offer of compromise from his client. The owner's attorneys then wrote plaintiff's attorney on July 7, 1927, who replied on July 14, 1927, that the offer of compromise would not be accepted.

About six months after the last letter was sent, the owner sold the Reno store to defendant. Defendant originally opened the store in 1919, and has owned and operated the same since that time with the exception of about a year (1927–28) when Ribner owned the same. There is no evidence to show that plaintiff had knowledge of the use of the name "Hudson Bay Fur Co." in Reno, prior to the time the first letter was written to Ribner. After defendant purchased the store from Ribner, an attorney for plaintiff wrote defendant on July 26, 1929, concerning the use of the name "Hudson Bay Fur Co.," and the reply of defendant thereto was on August 5, 1929. On October 12th following, plaintiff's attorney had a personal interview with defendant. The bill of complaint was filed on October 13, 1930. Although there is a dispute as to what defendant and plaintiff's attorney agreed upon at the conference mentioned, there is no dispute with respect to the attempt of plaintiff's attorney to secure abandonment of the use of the name "Hudson Bay Fur Company" by defendant.

In Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 145, 32 L. Ed. 526, it is said:

"Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself. * * *

"So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it; but so far as the act is in progress, and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise."

Under the facts as stated, we are unable to say that plaintiff has been guilty of laches.

■ At the trial there was offered in evidence by plaintiff three certificates of cancellation of trade-marks containing the name "Hudson Bay" and a similar name, which trade-marks were registered by third parties. There was also offered in evidence by plaintiff findings of fact and conclusions of law, and decrees in other suits brought by plaintiff in other jurisdictions against other parties who had been using the name "Hudson Bay Fur Co." Defendant contends that such evidence was inadmissible. It is unnecessary to consider this contention for the reason that all of these exhibits were marked for identification only, and the record does not disclose that they were ever received in evidence by the trial court. Defendant concedes that the record does not disclose whether or not these exhibits were admitted in evidence, and he therefore can have no complaint.

■ There was submitted to the trial court by both plaintiff and defendant separate statements of the evidence. Defendant's amended statement was settled and approved. Later the trial court entered an order permitting plaintiff to file a statement of any additional portion of the evidence embodied within its proposed statement, but requiring plaintiff to pay the cost of printing such additional statement. Thereafter plaintiff filed a motion in this court asking for an order consolidating into one record the separate statements. Plaintiff also filed a motion requesting an order vacating the order of the trial court which required plaintiff to defray the expense of printing its proposed statement of the evidence, and requiring appellant to pay the cost thereof.

Plaintiff's proposed statement of the evidence may have materially aided this court in the consideration of this case, but it was not indispensable to the decision thereof, and therefore both of plaintiff's motions are denied. We do not wish to be understood, however, as placing our stamp of approval on the method used by the defendant in his statement of the evidence, nor do we wish to be understood as sanctioning defendant's statement of the evidence only. A fair statement of the evidence is all that is required for the record on appeal, but appellant should use good faith to make such statement a full and fair one, so that the burden is not cast upon the court or the appellee to make a new one. We do not say that the statement as settled is unfair, but we do say that the statement when presented by appellant should be full and fair.

It is evident that the trial court was not satisfied with the statement as settled, otherwise that court would not have entered an order permitting plaintiff's statement to be considered as a part of the record, thus indicating that the court below believed that material evidence was not included in the statement as settled.

■ Plaintiff also filed a motion for an order increasing the amount of the bond filed by defendant. The amount of the bond as fixed by the trial court was $250, whereas the costs in the lower court were $420.47. In 3 C. J. 1162, it is said: "The fixing of the amount of an appeal bond, when not fixed by statute, is a judicial act, generally within the discretion of the trial court, and the exercise of such discretion will not be disturbed by the appellate court, when it does not appear that the court went beyond the limit of its authority, or that the appellee is exposed to irreparable loss * * *." There has been no showing that the trial court went beyond the limit of its authority, or that plaintiff is exposed to irreparable loss, and therefore the motion is denied.

This court has held that a supersedeas bond covers both the costs in the lower court and in the appellate court. Pacific Coast Casualty Co. v. Harvey (C. C. A.) 250 F. 952; compare Massachusetts Bonding & Ins. Co. v. Clymer Mfg. Co. (C. C. A. 10) 48 F.(2d) 513. We have not passed on the point as to whether or not a cost bond covers costs in the trial court as well as costs in this court, nor do we find it necessary to do so on the record in this case.

Affirmed.