## BUNTE BROS. v. STANDARD CHOCOLATES, Inc.

### No. 1153.

District Court, D. Massachusetts.

May 18, 1942.

Nathan Heard and Frederick A. Tennant, both of Boston, Mass., and John A. Marzall, of Chicago, Ill., for plaintiff.

David Stoneman and Singer, Stoneman & Kurland, all of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit in which the plaintiff relies for relief solely on its claim for technical trade-mark infringement.

The plaintiff is an Illinois corporation manufacturing and distributing candy with its principal place of business in Chicago. The defendant, also a manufacturer and distributor of candy, is a Massachusetts corporation with its principal place of business in Boston.

On May 18, 1915, the plaintiff registered in the United States Patent Office the trade-mark "Diana" (No. 104,316) alleging it had adopted and used this trade-mark in the sale and distribution of candy since August 6, 1907. This registration was renewed on May 7, 1935.

For several years before the date of the complaint and up to the present time, the plaintiff has sold hard candy in glass and metal containers throughout the United States, including Massachusetts. A picture of the mythical goddess "Diana" appears on a label on these containers and near the top of the label is the word "Bunte" appearing above the name "Diana". "Bunte" is in script and "Diana" is in block type. The confections in the containers are described, either above or below the picture, as "stuft" confections.

In 1938, the defendant began the manufacture and sale, and still sells, in various states, including Massachusetts, a small flat paper box containing twelve chocolates of good quality upon which appears the name "Diana Deane". There are no other marks of similarity on the defendant's small box beyond the use of the name "Diana Deane". "Diana Deane" appears on the defendant's letterheads and advertising without the presence of its firm name. The firm name, Standard Chocolates, Inc., is also absent from its boxes.

The evidence adduced by the defendant showed that none of the containers of hard

candy or any other type of candy, such as chocolates, distributed for many years past by the plaintiff bore the name of "Diana" alone, but in all instances, as far as representatives of the trade who testified knew, the containers bore the names "Bunte Diana", appearing in the manner described above, or merely "Bunte". The name "Bunte" was also used alone on some sizes of glass containers of hard candy. On the other hand, the defendant stipulated (paragraph 5 of stipulation) that the plaintiff is and has for several years past been selling candy bearing upon the containers the trade-mark "Diana".

The defendant showed through a number of candy retailers and a jobber of confections that the hard or "stuft" confections of the plaintiff were known in the trade as "Bunte's Diana" and these witnesses all testified they never heard of a single instance of confusion on the part of a purchaser with respect to the respective products of the plaintiff and the defendant. The plaintiff produced no evidence of actual instances of confusion and I find that the defendant made no sales of its chocolates that could be attributed to the use of the infringing mark.

On these facts the defendant argues (1) that the plaintiff does not own "Diana" as a common law trade-mark but in reality its trade-mark is "Bunte Diana" and (2) that even if it owns "Diana" as common law trade-mark there is little likelihood of confusion between that mark and "Diana Deane".

No question was raised by the defendant that the chocolates it sold were merchandise of the same descriptive quality as that set forth in the plaintiff's registration of its trade-mark.

The plaintiff alleged in its complaint that it was the owner of the trade-mark "Diana" for candy and that it had been registered in the patent office on the date stated above, and, also, that it had used this trade-mark continuously up to the date of the complaint.

The defendant stipulated that the "plaintiff is the grantee of, is now, and has ever since the grant thereof been the owner of United States trade mark registration No. 104,316, which registration was duly renewed May 7, 1935". (Paragraph 3 of stipulation). The defendant did not question the validity of the registration. It was quite evident at the trial that the plaintiff did not come into court with any idea that it would have to meet the defense that the plaintiff was not the owner of the trade-mark "Diana" because, as the defendant contended, it had never adopted or used any such trade-mark.

The case heavily relied upon by the defendant, i. e., Armour & Co. v. Louisville Provision Co., 6 Cir., 283 F. 42, is not applicable to the facts of this case. In the Armour case the plaintiff had not registered the word "Star" as a trade-mark and there was no admission, as there was here (paragraph 5, stipulation), that Armour & Co., had ever adopted and used "Star" as a trade-mark. Further, the court found as a fact that Armour & Co., always used "Star" in conjunction with "Armour's" and that never, at any time, had it adopted and used "Star" alone. There being no user of "Star" alone in connection with its products, Armour & Co., had no trade-mark in "Star".

■ In the instant case the registration under the 1905 Act created a presumption of adoption and use sufficient to make out a prima facie case and the defendant conceded the validity of this registration. Federal Trade-Mark Act of 1905, § 16, 15 U.S.C.A. § 96; Chapin-Sacks Mfg. Co., v. Hendler Creamery Co., et al., 4 Cir., 254 F. 553; Nims, Unfair Competition and Trade-Marks, 3rd Ed., c. XVI, Section 223. Further, the defendant stipulated "Diana" was used by the plaintiff on its containers for several years past.

■ It may be well, in view of the facts here, to consider briefly whether there is any evidence of abandonment in the case. I do not believe so. The burden is on the defendant to prove abandonment and the latter is purely a question of intent. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Burt v. Tucker, 178 Mass. 493, 59 N. E. 1111, 52 L.R.A. 112, 86 Am.St.Rep. 499; Nims, Unfair Competition and Trade-Marks, Section 408, p. 1011. It cannot be said that the plaintiff intended to abandon its trade-mark merely by using its own name in conjunction with it and certainly abandonment cannot be found in view of the admission of user in paragraph 5 of the stipulation.

The only question remaining is whether the defendant did, within the meaning of the provisions of Section 16 of the 1905 Act, 15 U.S.C.A. § 96, reproduce, counterfeit, copy, or colorably imitate, the plain-

tiff's trade-mark "Diana" in the sale of its candies under the circumstances outlined above.

Most of the cases cited by the parties are federal cases. There is no need to make any distinction between these and the applicable Massachusetts cases. They both stand for the same principles.

■ The test with regard to this latter issue is whether the words "Diana Deane" are so similar to "Diana" that any person with such reasonable care and observation as the public are so generally capable of using and may be expected to exercise, would mistake one product for another. Gilman v. Hunnewell, 122 Mass. 139; Mc-Lean v. Fleming, 96 U.S. 245, 24 L.Ed. 828. Under the facts here, would the purchaser who merely looks or hears as the ordinary purchaser does, be misled? There was no similarity in the containers used for the different candies by the respective parties. There was no similarity of labels. The only similarity was in the use of the word "Diana".

■ The court said in Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, at page 31, 21 S.Ct. 7, 12, 45 L.Ed. 60, "It is not necessary to constitute an infringement that every word of a trademark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article." Cf. Ammon & Person v. Narragansett Dairy Co., Ltd., 1 Cir., 262 F. 880, 881, where the plaintiff had a trade-mark "Queen of the West" and the defendant infringed by the use of "Queen".

■■ And the addition of other words by an infringer may not destroy the identity of a trade-mark or name and relieve the infringer of the consequences of infringement. The court in the case of Coca-Cola Co. v. Stevenson et al., D.C., 276 F. 1010, 1014, stated the principle in the following language: "Added words and their embellishment do not destroy property rights in a trade-mark". In Thomas G. Plant Co. v. May Co., 6 Cir., 105 F. 375, "Quality" was added by the plaintiff to "Queen" which was a trade-mark of the plaintiff. It was held here that the plaintiff was entitled to protection against the use of "Queen" by another manufacturer and seller of ladies' shoes. The addition did not destroy the identity of the trade-mark. In Century Distilling Co. v. Continental Distilling Co., 3 Cir., 106 F.2d

486, it was held that "Dixiana" and "Dixie Dew" infringed the trade-marks "Dixie Belle" and "Dixie Beau". In Nashville Syrup Co. v. Coca Cola Co., 6 Cir., 215 F. 527, 528, Ann.Cas.1915B, 358, "Coca cola" was held infringed by the name "Fletcher's Coca Cola" used on the same product. In Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, "Cutex" was held to be infringed by "Cuticlean". The court said that infringement did not depend on the use of identical words. 18 F.2d page 775. A further citation of cases seems unnecessary. Each case stands on its own facts and the basic question involved in all of them is whether there is likelihood of confusion. It is of no moment that there is no direct evidence of confusion or intention to confuse, which elements I find missing in the present case.

■ The plaintiff's trade-mark consisted of one word and that word or name was adopted by the defendant as the first word of its trade-name. First names in trade-marks catch the eye and ear. They are very likely to be the dominant words. Where an only word or first word of a trade-mark is adopted by a competitor, as the first word in its trade-mark, there is more likelihood of confusion than when second or later words are used. Cf. Coca-Cola Co. v. Carlisle Bottling Co., D.C., 20 F.2d 909, affirmed 6 Cir., 43 F.2d 119. There is no intimation here that if only later words are used, or first words are used as later words, in a competitor's trade-mark, there is not likely to be confusion. As stated above, each case is bottomed on its own facts. And it is my conclusion in this case that the defendant's "Diana Deane" was likely to be confused by the purchaser with the plaintiff's "Diana".

■ Another point the defendant argues in its brief is to the effect that the plaintiff which admittedly used "Diana" on three different kinds of its hard candy used it to denote grade or quality and this fact "has deprived it of any right of protection by this court". What the defendant means by the words I have quoted from its brief, I do not exactly know. If it means the plaintiff has no trade-mark in "Diana" because of this, I do not believe this question is open to it, the validity of the trade-mark being admitted by the stipulation. However, it might be well to go on and say that even if the validity of the trade-mark were being questioned, "Diana" is not the use of a word to desig-

nate or identify a grade or quality of merchandise and, consequently, is not invalid as a trade-mark. "Diana" is an arbitrary word and used to denote origin, and properly registerable if adopted and used.

The only remaining question, in view of the finding of technical trade-mark infringement, is the measure of relief.

The plaintiff offered no evidence of its own actual damage or of the defendant's profits. Section 19 of the Act of 1905, 15 U.S.C.A. § 99. The defendant acted in good faith in using "Diana Deane"; there was no attempt at any time to deceive the public. The defendant proved there was no instance of actual confusion in the sale of its chocolates and it made its sales for a reason other than the association of the infringing mark. The infringement, consequently, hardly bore any relation to any profits made by the defendant. In other words, the infringement had no cash value in sales made by it. Cf. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., May 4, 1942, 62 S.Ct. 1022, 86 L.Ed. ——.

Under the circumstances, judgment will be to the effect that a permanent injunction will issue restraining the defendant from using the name "Diana" in the manufacture and sale of its candies.