**McCABE–POWERS AUTO BODY CO.,**
**Plaintiff,**

v.

**AMERICAN TRUCK EQUIPMENT**
**COMPANY, Defendant.**

**Civ. A. No. 7725.**

United States District Court
D. Oregon.

Feb. 28, 1957.

Hart, Spencer, McCulloch, Rockwood & Davies, Portland, Or., by William W. Wyse, Portland, Or., for plaintiff.

W. E. Ramsey, J. Pierre Kolisch, Portland, Or., Alfred W. Petchaft, St. Louis, Mo., for defendant.

EAST, District Judge.

### Parties and Jurisdiction

The Plaintiff, McCabe-Powers Auto Body Co., is a Missouri corporation, with its principal office and place of business in St. Louis, Missouri.

The defendant, American Truck Equipment Company, is an Oregon corporation, having its principal office and place of business in Portland, Oregon.

Jurisdiction of this Court is founded upon diversity of citizenship with the amount of the controversy involved exceeding $3,000. Further, that the suit is prosecuted under trade-mark laws of the United States, Act of July 5, 1946, C. 540, Title VIII, Sec. 43, 15 U.S.C.A. § 1125.

### Statement of Case

The Plaintiff filed its complaint alleging, in connection with its merchandising affairs, first, unfair competition, second, trade-mark infringement, and third, false designation of origin on the part of the Defendant in its merchandising activities, and prayed for relief, in short, as follows:

1. Injunction from the use by Defendant of the designation, "American" in its corporate name or as trade-mark or in any way, manner or form whatsoever in connection with Defendant's merchandising of its product.

2. An accounting by the Defendant for profits and damages.

3. The appointment of a master herein.

4. Costs.

5. For such further equitable relief as the Court sees fit.

The Defendant's answer is, in short, a general denial of the allegations of Plaintiff's complaint, and by way of counterclaim the Defendant asserts that Plaintiff's action is filed wilfully, maliciously and in bad faith to harass the Defendant and for the sole purpose of damaging the Defendant rather than to protect any right Plaintiff might have, and prays, in short, for the following:

1. That Plaintiff's complaint be dismissed.

2. That Defendant be awarded $50,000 general damages and $50,000 exemplary damages.

3. For recovery of costs of action and further equitable relief as the Court deems just.

### Statement of Facts

From the agreed facts in the pre-trial order admitted herein and the evidence adduced at the trial, the Court finds:

That the American Coach and Body Company, an Ohio corporation, (American Coach) was founded in 1922. American Coach maintained its principal office in Cleveland, Ohio, and was engaged in the business of manufacturing and selling throughout the United States metal bodies and vehicle mounted equipment used by public utility companies and authorities. American Coach, in promotion of its merchandise, advertised under the notation "American". These advertisements appeared in various mag-

azines and publications throughout the United States.

There had been filed in the United States Patent Office application for registration of the trade-mark "American." The exact status of the trade-mark registration through the Patent Office of the notation, "American" is not clear. Suffice to say registration of the notation is of no concern to this litigation as the plaintiff claims a common law trademark in connection with the notation "American."

Salesmen of American Coach were generally known throughout the trade and referred to as "American" salesmen. Brochures and catalogues identified equipment and parts as "American." Orders for equipment and replacement parts were ordered from American Coach by the trade throughout the United States through the use of the word, "American" plus a serial or identification number.

That from 1922 until 1950, American Coach was the leader and in all probability the largest manufacturer in this particular field of merchandise in the United States, all with national distribution and good reputation. The trade-mark of American Coach was a shield with the letters "ACB" inscribed.

Prior to 1950 the plaintiff and American Coach had been competitors in this specialized field. The plaintiff had its original inception in Missouri in 1871 as the McCabe-Young Manufacturing Company and has been a corporation with its present name since 1923. The trademark of plaintiff had been "Powers" within an oval.

In 1950 the plaintiff, at a cost of over $1,000,000 purchased the business of American Coach as an addition to its business, acquiring all trade-marks, good will, patents, files and assets of every nature except real estate.

After the mentioned purchase, plaintiff, with an intent to consolidate the good will of the "Powers" company and the "American" company, combined the words "Powers" and "American" within the "Powers" oval. This combination was and is still being used in advertising, letterheads, brochures and catalogues. Plaintiff has expended approximately $600,000 for advertising within the field using the above designation during the six year period since the purchase.

Plaintiff has developed an intended plan whereby the "Powers" oval was to be gradually de-emphasized and the "ACB" shield dropped entirely. For this reason there would be a transitional period where both names would be used and therefore the application for registration of the trade-mark was allowed to drop.

The Defendant was organized in 1951. The principal stockholders and officers are Mr. Thomas R. Hall and his father, Mr. Fred Hall. Prior to the organization of Defendant, both of the mentioned men were in the employ of the Plaintiff and had been previously in the employ of American Coach. Mr. Fred Hall, for many years, had been a salesman for American Coach and later manager of their Oakland, California branch office.

Shortly before the purchase of American Coach by the Plaintiff, but after knowledge of the purchase and negotiations for future employee-employer relationship, the connection of the two men with Plaintiff was severed. The evidence does not clearly indicate the entire circumstances of the severance, however, it is clear there was an irreconcilable disagreement between the parties over the basis of future employment. It is evident from the evidence that the parting of the ways was not friendly or harmonious. Shortly after the severance of employer-employee relationship the Messrs. Hall organized the Defendant corporation, and engaged as principal stockholders and officers in its corporate management.

## Contentions

█ It is the Plaintiff's contention that since at least 1924 and until 1950, the trade within the utility field had come to recognize merchandise bearing the notation "American" as emanating from and being the product of American Coach. That because of this, the word

"American", although admittedly being geographic in its inception, had acquired a secondary meaning within the utility body and vehicle equipment field, and thus became a valid common law trademark.

Defendant contends that it adopted the word "American" in its corporate name because when it started business it was handling the products of at least two companies whose names included the name "American," and, further, that it was spreading nationally and was not to be confined to a local concern status.

Is the word "American" capable of trade-mark significance in the public utility field?

A leading case in this Ninth Circuit is North American Air Coach Systems, Inc., v. North Amercan Aviation, Inc., 1955, 231 F.2d 205, at page 208, wherein the following premise is made basic:

"The purposes for which plaintiff was organized, its history as a business concern, the relationship of the public to the activities so conducted and the good will built up in that business are important factors in determining the existence and extent of a secondary meaning of the name of plaintiff."

The Court points up a distinction between so-called "strong" and "weak" trade names and classifies "weak" names as words of common speech and those descriptive of the locality or area where services are performed, and that where facts warrant Courts will grant protection even to "weak" trade names or marks. The Court continues at page 210:

"The doctrine of secondary meaning is applied as to weak names and particularly as to descriptive or geographic designations. The question of whether a monopoly of such a title has been acquired depends upon its use in relation to goods, business or service to the point where the public identifies the name with a particular individual or entity. It is extremely difficult to give to a geographic term a proprietary connotation since under ordinary circumstances it cannot be used to exclude others who operate in the same area, as above noted. But this does not mean that a name of territorial origin may not acquire a secondary or fanciful meaning. When this occurs, the proprietorship in the designation or mark will be afforded as complete protection as if it were a 'strong' mark at the inception."

See the following cases that reason a geographic name which has acquired a secondary meaning in connection with or in relation to a merchandise product will be protected: Phillips v. Governor & Co. of Adventurers of England Trading into Hudson's Bay, 9 Cir., 79 F.2d 971; American Automobile Insurance Co. v. American Auto Club, 9 Cir., 184 F.2d 407.

The defendant lays stress upon the case of American Wine Co. v. Kohlman, C.C., 158 F. 830, in suggesting that the word "American" is ordinarily incapable of being a trade-mark. This Court believes the mentioned case is distinguished from the case at bar for the reason that the single issue in The American Wine Co. case was whether a valid technical trade-mark had been established. Quoting from the case at pages 832–833:

"The bill in the case at bar does not proceed upon the ground of unfair competition in trade. There are no facts alleged in the bill which show that any injury has resulted to the complainant, or is likely to result to it. It is not alleged that the defendants are engaged in the business of manufacturing or selling wine. It is not alleged that they are in any business similar to that of complainant, or that they deal in or sell any goods or product of like kind with those of complainant. It is not alleged that the defendants are selling or palming off or attempting to palm off, by any particular device, symbol, name, or manner of marking, their goods for those of complainant. There are no facts alleged in the bill showing

ground of fraud on the public and on complainant perpetrated by the defendants by intentionally and fraudulently selling or attempting to sell their goods as those of complainants."

Defendant insists that the Plaintiff has not offered sufficient proof of its alleged secondary meaning of the notation "American" in connection with its business. Plaintiff's evidence in this respect consists of testimony at trial and by way of depositions of Plaintiff's agents and officials and employees, independent dealers and distributors and other persons handling Plaintiff's line of product for resale, plus catalogues, advertising material and purchase orders. Many of the witnesses whose testimony was taken by deposition were independent dealers. It is clear that these dealers handled competing lines of merchandise. These agents purchased from Plaintiff and sold to public utilities. This Court cannot treat this type of testimony, of long personal knowledge of the product and familiarity with the notation "American" as a trade-mark in the utility field lightly.

The long practice of advertising the word, "American" and by its use in catalogues and brochures to identify parts and products as that of its company, are relevant, material and strong evidence. It clearly goes to show the purposes for which Plaintiff was organized, its history, the business conducted, the relationship of the public (selling area) to the activities so conducted and good will built up in that business, bearing in mind that Plaintiff's customers are in a highly specialized field or market as distinguished from the general purchasing public.

The Defendant urges that the evidence should be viewed in the light of the doctrine of Steem-Electric Corporation v. Herzfeld-Phillipson, D.C., 29 F.Supp. 1011, and Folmer Grafex Corp. v. Graphic Photo Service, D.C., 44 F.Supp. 429, and Skinner Mfg. Co. v. General Foods Sales Co., Inc., D.C., 52 F.Supp. 432.

This Court believes that these cases are distinguishable from the case at bar. For, in the Steem-Electric case the evidence, with which the Court was not impressed, came from "paid investigators." The Folmer case was later set for rehearing and a consent judgment against the defendant was entered in 1946. The point of the Skinner case decision is that the term "raisin-bran" was used in a descriptive rather than a trade-mark sense and that the testimony established descriptive usage rather than secondary meaning.

The Court is of the opinion that the evidence on behalf of the Plaintiff clearly establishes that as to American Coach the designation "American" had a secondary meaning in line with the merchandising of its product and that the plaintiff succeeded to the rights of American Coach with reference thereto.

Does the fact that the word "American" was later used in connection with the word "Powers" constitute an abandonment on the part of Plaintiff?

Defendant urges that if American Coach had a common law trade-mark in a designation of the word, "American," it was acquired by the plaintiff at the time of its purchase of American Coach and its assets as aforesaid, and it was unnecessary and in derogation of the trade-mark for plaintiff to change the mark to "Powers-American" and thus, through its action and conduct abandoned any common law trade-mark it may have acquired.

In Bunte Bros. v. Standard Chocolates, Inc., D.C., 45 F.Supp. 478, the Court was presented with a somewhat analogous situation with the instant case. The Bunte Bros. case was an action involving alleged trade-mark infringement. The plaintiff for several years had been using the trade-mark in question in connection with his own name, and in considering the question of alleged abandonment, the Court said, at page 480:

"The burden is on the defendant to prove abandonment and the latter is purely a question of intent.

* * * It cannot be said that the plaintiff intended to abandon its trade-mark merely by using its own name in conjunction with it and certainly abandonment cannot be found in view of the admission of user in paragraph 5 of the stipulation."

■ The following cases establish the premise that to prove abandonment there must not only be a non-user but a concurrent intent to abandon. Gold Seal Associates, Inc., v. Gold Seal Associates, Inc., D.C., 56 F.2d 452; Southeastern Brewing Co. v. Blackwell, 4 Cir., 80 F. 2d 607; Nieman v. Plough Chemical Co., 6 Cir., 22 F.2d 73.

■ It therefore, follows, that inasmuch as American Coach had established a valid common law trade-mark in the designation "American" and Plaintiff acquired such rights as American Coach had in the same, it would necessarily follow, under the above authorities, that the mere addition to the trade-mark "American" of the use of its own name in connection therewith, would not constitute an abandonment. Furthermore, the evidence is conclusive that the Plaintiff did not at any time intend to abandon the designation of the word "American."

Is bad faith or motive a factor in trade-mark infringement?

■ Bad faith is not a necessary element to establish unfair competition or trade-mark infringement. Cotex Corp. v. Oxtex Corp., 121 N.J.Eq. 377, 187 A. 750.

It appears from that case that Cotex Corp. for a number of years had been engaged in the manufacture of artificial leather. It had registered the name "Cotex" in oval form. In the fall of 1935 one of its salesmen left its employ and organized the defendant corporation which engaged in the business of manufacturing and marketing artificial leather. It had stamped on its product the word "Oxtex" with the letter "T" enlarged and the head of an ox superimposed.

The Court opined in that case:

"The fact that the defendant was organized by a former employee of complainant is immaterial. He had as much right as any third person to use the name Oxtex and of course he had no greater right."

However, where there has been bad faith the Courts have uniformly given relief.

"A fraudulent intention or bad faith will be inferred where the junior appropriator had knowledge of plaintiff's trade-mark, trade name or trade symbols and nevertheless deliberately copies such mark, or name or symbols." Lone Ranger v. Currey, D.C., 79 F.Supp. 190, 196.

■ In Chas. S. Merton & Co. v. Percy Merton, Inc., 103 N.J.Eq. 380, 143 A. 515, Percy, a brother of Chas., had for many years been employed by the Chas. S. Merton Co. He started as an office boy and at the time he withdrew from the company was a director and sales manager, following which he organized a new competing business giving it his own name. The case held that the use of the name by the new company should be enjoined. It is clear the Court could enjoin even the use of one's own name in establishing a competing business when bad faith is shown.

Other similar cases following this line of reasoning are: Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674; California Fruit Growers Exchange v. Windsor Beverages, Limited, 7 Cir., 118 F.2d 149; Premier-Pabst Corporation v. Elm City Brewing Co., D.C., 9 F.Supp. 754.

Quoting again from North American Aircoach Systems, Inc., v. North American Aviation, Inc., supra [231 F.2d 211]:

"It may be remarked in passing that there is no rule that knowing and unauthorized appropriation of the name by defendants is not a factor for consideration in determining whether the rights of plaintiff have been infringed. 'These two consid-

erations, the length of user and the fraud, are enough evidence of secondary meaning to support an injunction.' American Medicinal Spirits Co. v. United Distillers, Ltd., 2 Cir., 76 F.2d 124, 125."

Although the present case can be distinguished from the North American case and cases cited therein, one principle of law involved is the same. The defendants in the cases recognized the selling power in the plaintiff's name or trade-mark and intentionally endeavored to capitalize upon it to the expense of the plaintiff.

The case of Phillips v. Governor & Co. of Adventurers of England, Trading into Hudson's Bay, supra, lends light to this matter. In that case the defendant was permanently enjoined from advertising or conducting business under the name, Hudson Bay Fur Company. The plaintiffs in that case were and are commonly called the Hudson Bay Company, and the defendant, Fredrich Phillips, was an individual doing business under the assumed name and style of Hudson Bay Fur Company. The history of the English firm is legendary in North America. The defendant operated a retail store in Reno, Nevada, known as Hudson Bay Fur Company. The Court held that although the name was geographic it had by long use acquired a secondary meaning in the kind and quality of its goods and therefore [79 F.2d 973]:

"it is no objection to the issuance of an injunction that its name is geographical."

and also, 79 F.2d at page 973:

"Defendant's second contention is that no injunction should issue, because 'Hudson's Bay' is a mere descriptive term and therefore plaintiff is not entitled to the exclusive use thereof. He states that there are cities named 'Hudson' and 'Hudson Falls'; that there is a 'Hudson' river and a 'Hudson' motor car, and that 'Hudson' in the fur industry has been used to denote a particular fur, such as 'Hudson Seal,' 'Hudson Bay Sable,' and 'Hudson Bay Seal'.

In 63 C.J. 424, § 115, it is said: 'Descriptive terms and generic names are publici juris and not capable of exclusive appropriation by any one, but may be used by all the world in an honestly descriptive and non deceptive manner. * * * Nevertheless, even descriptive and generic names may not be used in such a manner as to pass off the goods or business of one man as and for that of another. Where such words or names, by long use, have become identified in the minds of the public with the goods or business of a particular trader, it is unfair competition for a subsequent trader to use them in connection with similar goods or business in such a manner as to deceive the public and pass off his goods or business for that of his rival' * * *."

In the case at bar the Messrs. Hall had been employed by American Coach and the plaintiff. Both knew the goodwill and reputation of the word, "American" in the utility field and of plaintiff's plan to capitalize upon and use the goodwill name of the company it had purchased. Therefore, the use of the word, "American" at the outset by a local business in a highly specialized field is indicative of and permits the inference of bad faith on the part of the principal stockholders and main officers of the defendant.

■ Must plaintiff establish confusion in order to obtain injunctive relief?

The defendant contends that plaintiff cannot prevail unless plaintiff can show satisfactorily that defendant's use of the word, "American" as a distinctive part of its corporate name had resulted or was reasonably likely to result in confusion on the part of the purchasing market between products of the plaintiff and defendant, and cites Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, and Palmer v. Gulf Publishing Co., D.C., 79 F.Supp. 731.

In the Kellogg case the plaintiff sought to enjoin the defendant from using the

name, "shredded-wheat", and not to produce its biscuit in pillow shaped form. The Court held that the term, "shredded-wheat" was the general designation of the product. The court said [305 U.S. 111, 59 S.Ct. 113]:

> "But to establish a trade name in the term 'shredded wheat' the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer."

In speaking of confusion, after holding Kellogg Company had the right to manufacture "shredded-wheat", the Court further said:

> "The obligation resting upon Kellogg Company is not to insure that every purchaser will know it to be the maker but to use every reasonable means to prevent confusion."

In the instant case it is not the product that is involved. The plaintiff is not complaining that the defendant has no right to manufacture and sell its manufactured goods in the public utility field even though the defendant's vehicle and body work may be of similar design to that of the plaintiff. The plaintiff is aggrieved, however, by the defendant's use of the word, "American" to designate its manufactured goods and seeks to restrain the defendant from using the name, "American" in connection with the manufacture and marketing of its product in competition with that of the plaintiff.

The dissimilarity of Palmer v. Gulf Publishing Co., supra, and the instant case is pointed up by the following language of District Judge Yankwich [79 F.Supp. 737]:

> "And here, as will presently be shown, the external appearances of the magazine are so dissimilar that 'to the eye there is not the slightest danger of deception.'"

So it follows that there is no necessity to show actual confusion. Likelihood of confusion in the minds of the purchasing market as to products of respective companies is all that is necessary.

Bunte Bros., supra, 45 F.Supp. at page 481, summarizes this principle as follows:

> "Each case stands on its own facts and the basic question involved in all of [this] is whether there is likelihood of confusion. It is of no moment that there is no direct evidence of confusion or intention to confuse, which elements I find missing in the present case."

This Court is quite of the opinion that use of the word, "American" as a distinctive part of the defendant's corporate name and in connection with the sale of its product, whose principal officers were formerly employed by the plaintiff and American Coach, can and probably will result in confusion in the minds of the purchasing market.

See also a relatively recent case of Sullivan v. Ed Sullivan Radio & TV, Inc., 1 A.D.2d 609, 152 N.Y.S.2d 227.

## Conclusion

From the foregoing the Court concludes that the plaintiff is entitled to a decree herein to the effect that the defendant, its officers, agents, and employees, as well as any other and all persons acting by, through or under them, be permanently restrained and enjoined by order and injunction of this Court from directly or indirectly using, selling or acting, in each and all of the particulars set forth in sub-sections (a), (b), (c) and (d) of paragraph 1, of plaintiff's prayer for relief, and allowing plaintiff costs of suit to be taxed, and denying the remainder of plaintiff's prayer for relief.

Counsel for the plaintiff is requested to submit proposed Findings of Fact and Conclusions of Law in conformity with the foregoing opinion and serve counsel for the defendant with copy thereof on or before March 15, 1957, and settlement of Findings is set for Monday, March 25, 1957, commencing at 2 P.M.