**TILLAMOOK COUNTY CREAMERY AS-SOCIATION, Appellant,**

v.

**TILLAMOOK CHEESE AND DAIRY AS-SOCIATION, Appellee.**

No. 19565.

United States Court of Appeals
Ninth Circuit.

April 7, 1965.

As Amended May 20, 1965.

J. Pierre Kolisch, Kolisch & Hartwell, Portland, Or., Warren A. McMinimee, Tillamook, Lester Epstein, Portland, Or., Jon M. Dickinson, Portland, Or., for appellant.

Joseph B. Sparkman, Kenneth S. Klarquist, Buckhorn, Blore Klarquist & Sparkman, Portland, Or., Jack, Goodwin & Anicker, James O. Goodwin, Oregon City, Or., for appellee.

Before POPE, HAMLEY and ELY, Circuit Judges.

POPE, Circuit Judge.

The appellant, as plaintiff below, brought this action alleging that it had adopted as a trade-mark in April, 1918, the name "Tillamook" for cheese and other dairy products which it sold and marketed and thereby became the owner of said trade-mark. On November 7, 1950, plaintiff registered under United States Trade-Mark Registration No. 533,033, the name "Tillamook" for cheese and butter. The complaint alleged that this trade-mark came to be associated in the trade and in the mind of the purchasing public with dairy products, particularly cheese, originating with plaintiff; that thereafter the appellee, defendant below, sold and marketed cheese under its name "Tillamook Cheese and Dairy Association" and the name "Premium Brand"; that the label and name used by defendant was capable of misleading and it has deceived and confused the buying public causing it to believe it is buying plaintiff's product; that defendant was using the words "Tillamook Cheese" on its letterheads and has been marketing cheese under that name. This, it is alleged, constituted trade-mark infringement and unfair competition and has caused great harm to plaintiff and to its trade-mark. The complaint asked for an injunction restraining the defendant from using the name "Tillamook" in connection with the marketing and sale of cheese.

After trial, before the court, the court made findings and conclusions and entered a decree holding that the defendant owns and has the full right to use the mark "Tillamook" on cheese; that the defendant had not infringed any trade-mark rights of the plaintiff, and it had not been guilty of any unfair competition. The court enjoined the plaintiff from threatening others, including customers of the defendants, with any action for unfair competition or trade-mark infringement on account of the name "Tillamook" in connection with the marketing of cheese and from asserting that the defendant may not market its cheese with the trade-mark "Tillamook" or sell such cheese, and from instituting any action based on the trade-mark infringement or unfair competition in connection with the trade-mark "Tillamook". This appeal followed.[1]

The facts in the case are not in dispute and substantially all of them were set forth as agreed facts in the pretrial order. As there disclosed, in 1895 a corporation organized under the laws of the State of Oregon with the name "Tillamook Creamery" began the manufacture and sale of cheese under that name in Tillamook County, Oregon, a county in which production of dairy products for

---

1. Some other issues not material here were reserved for trial and determination at a later time but the court made a part of its judgment the determination that there was no just reason for delay under Rule 54(b) of F.R.Civ.P.

the manufacture of cheese was a principal industry. From the time of its organization in 1895 until 1949, that Tillamook Creamery manufactured and sold cheese under that name. In 1949, an Oregon cooperative corporation was formed under the name "Tillamook Cheese Association" which became the successor to Tillamook Creamery and three other cheese or creamery associations which were Oregon cooperative corporations. In 1962, this Tillamook Cheese Association, and a certain fluid milk shippers association, were consolidated as an Oregon cooperative corporation under the defendant's present name Tillamook Cheese and Dairy Association. It thus appears that Tillamook Cheese Association became the successor of the original Tillamook Creamery and the defendant Tillamook Cheese and Dairy Association in turn became the successor of Tillamook Cheese Association.

In 1909, the plaintiff Tillamook County Creamery Association, a cooperative corporation organized under the laws of Oregon, was formed by a group of cheese producers in Tillamook County for the purpose of inspecting and grading the cheese made by such producers. In 1917, plaintiff's articles were amended and the organization undertook thereafter to market the cheese produced by its member producers as well as to grade the same, and by 1924 all the cheese produced in Tillamook County, including that of defendant and its predecessor, was being sold through the plaintiff Tillamook County Creamery Association. This continued until 1963 when the defendant Tillamook Cheese and Dairy Association separated from the plaintiff Tillamook County Creamery Association and since that date has been marketing its own cheese as above indicated. It operates a large and substantial cheese plant in Tillamook County, located near the City of Tillamook, Oregon, and for a long period of time, including the time when plaintiff was marketing the defendant's cheese product, defendant's factory was advertised by plaintiff as "The Home" of the Tillamook cheese and a picture of that factory appeared on plaintiff's letterhead. Whether for this or other reasons, the defendant's factory was visited by many thousands of visitors from all over the country.

Since the defendant terminated its membership in the plaintiff organization the plaintiff has continued to represent six other members who operated cheese plants in Tillamook County. Plaintiff has never itself manufactured any cheese and it owns no plant for that purpose.

■■ We start here with the self-evident proposition that before plaintiff may procure an injunction against the defendant's use of the name or mark here in issue, plaintiff must establish its exclusive right to the trade mark "Tillamook" on the strength of its own title. In undertaking to establish such a case, the plaintiff is confronted with a number of difficulties. The fact that plaintiff procured registration of its so-called trade-mark does not carry plaintiff over its difficulty because it is elementary that a trade-mark right is not acquired by registration. A right to a trade-mark stems from prior appropriation and use.[2] This is recognized in the Lanham

2. The trial court's opinion takes note of this rule in the following quotations: " * * * Federal registration does not create a trade-mark. The trade-mark comes from use, not registration, and the right to it is in the nature of a property right based on common law." Campbell Soup Company v. Armour and Company, 175 F.2d 795 (3rd Cir. 1949).

" * * * in the United States the exclusive right to the use of a trade-mark has always rested and still rests upon the common law." 1 Nims, Unfair Competition and Trademarks, § 185, p. 511 (4th Ed. 1947).

" * * * under accepted theory, a trade-mark right is not acquired by registration. The entire system of trade-mark property and protection was recognized by the common law in England and the United States. It existed long before the Federal Trademark Act, and has remained in full force since its passage." Callmann, Unfair Competition and Trademarks, 2d Ed. Vol. 4, p. 2066 (1950).

"The right to a trade-mark does not depend upon the statutory enactments.

Act itself, 60 Stat. 446, § 49, reading as follows: "Sec. 49. Preservation of Existing Rights. Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith prior to the effective date of this Act." [3]

Therefore, assuming that the name "Tillamook" can possibly meet the standards and requirements of a valid trademark, it is plain that if the defendant first adopted, used and acquired "Tillamook" as a trade-mark, and if it did not by subsequent acts or conduct lose that trade-mark, then the plaintiff's use of that name and mark from 1918 on, as well as its registration of the mark in 1950, could not operate to deprive the defendant of its prior rights to the use thereof.

This is what the trial court decided and found. The court found that "For some years prior to 1913 and continuously thereafter until approximately 1918, [defendant's] predecessor actually designated, appropriated and used the word 'Tillamook' as a brand name and trademark in connection with the marketing of its cheese and branded such cheese on the rind with the mark 'Tillamook.'" The court also held that during the time that plaintiff was marketing defendant's cheese it was "merely an agent or servant for the various factories, without which plaintiff would have no purpose or mission in life." During this period plaintiff "sold the cheese of its factory-members under the brand 'Tillamook' for the benefit of its members." It held that the registration of the trade-mark by plaintiff was with the consent and acquiescence of its predecessor "solely for the purpose of giving plaintiff's members * * * the increased benefit and protection offered by registration * * * in connection with the marketing of the members' cheese." [4]

Essentially the trial court has found that assuming the propriety and validity of the trade-mark "Tillamook", that trade-mark was first acquired and used by the predecessors of the defendant

---

It stems from common law and is perfected by prior appropriation and use. Therefore, registration is not controlling in a suit involving common law rights to a registered mark or in a suit for unfair competition arising out of its use." Callmann, supra, 2068.

In accord with the authorities cited by the trial judge, are Armstrong Paint & Varnish Works Co. v. Nu-Enamel Corp., 305 U.S. 315, 324, 333, 59 S.Ct. 191, 83 L.Ed. 195; Brown & Bigelow v. B. B. Pen Co., 8 Cir., 191 F.2d 939, 942; Best & Co. v. Miller, 2 Cir., 167 F.2d 374, 376; Huber Baking Company v. Stroehmann Bros. Company, 2 Cir., 525 F.2d 945, 955.

Many cases are collected in Callmann's text, supra, § 97.3(a) pp. 2066, et seq.

3. Another portion of that act which suggests the same rule is § 2(d) (15 U.S.C. § 1052(d)) which provides that registration must be refused where the mark "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent Office *or a mark or trade name previously used in the United States by another* and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause

mistake, or to deceive." (Emphasis added.)

4. The court also found that plaintiff never acquired from defendant or its predecessors the right to use the word "Tillamook" as a brand or trade-mark; that the defendant had the right to terminate its marketing agreement with plaintiff and sell its own cheese through another agent; that the defendant's "Premium Brand" label did not and is not likely to cause confusion in the trade; that no acts or things done by the defendant had caused the plaintiff to change its position or jeopardize its right and privilege to make use of the registered brand "Tillamook" for marketing the cheese of its members; that neither the defendant nor its predecessors had been divested of its ownership of the common law right to the trade name Tillamook in connection with the marketing of its cheese; that the defendant was not estopped from proving its common law rights to the trade-mark Tillamook; that the defendant has the right to use its trade name "Tillamook Cheese and Dairy Association" in connection with the sale of its cheese and other dairy products; and that such use does not infringe any of the plaintiff's rights.

prior to 1913, and prior to the time when the plaintiff came into existence. It found, correctly we think, that the defendant never lost its common law rights to that trade-mark and that nothing which has occurred would operate to estop defendant from continuing to claim and use its trade-mark. Accordingly, we are of the opinion that the court correctly held that the defendant owns the mark "Tillamook" for cheese; that it has a further right to use the same, and that it has not infringed any trade-mark right which the plaintiff may have.

Appellant asserts that since it had been selling all of the Tillamook County cheese, including that of the defendant during the period 1918 to 1963, and since during this time the defendant made no objections to what plaintiff was doing and never made any claim of ownership in the trademark, defendant is now estopped from claiming any ownership through its predecessors prior to 1918.

Appellant asserts that its position is commanded by the decision in Holly Hill Citrus Growers Assn. v. Holly Hill Fruit Prod., 5 Cir., 75 F.2d 13, and by Pacific Supply Co-op. v. Farmers Union Central Exch., Inc., 9 Cir., 318 F.2d 894. We agree with the trial judge that these cases are distinguishable on their facts. In the Holly Hill case, the earlier company which used certain trade-marks later organized Fruit Products, and the latter for a cash consideration purchased from the former the first company's "business, trade-mark business and good will, all the labels, the die and other physical properties." The trial court found that no such transaction occurred here.

In Pacific Supply Co-op., supra, plaintiff asserted an exclusive license to use certain registered trade-marks through use, practices and customs of the parties.

However, it pleaded that it was a licensee of the defendant and that the defendant was the owner of the trade-marks. This was stipulated and admitted, and of course judgment had to go against the plaintiff. No such admission was made by the defendant here.

■■ The appellant asserts further that the defendant abandoned its original trade-mark rights. However, appellant made no claim of abandonment in the court below and no such claim was stated to be an issue in the case. Accordingly no specific finding on the question of abandonment was made by the trial court and it is doubtful if appellant can make this claim of abandonment for the first time upon this appeal. In any event, it is plain that no showing of abandonment has been made here for the reason that to prove abandonment there must be proof of an intent to abandon, National Lead Co. v. Wolfe, 9 Cir., 223 F.2d 195, 205, and there was no such showing here. In effect the intent to abandon here is negatived by the trial court's finding that the use of the name "Tillamook" by plaintiff, when plaintiff was acting as selling agent, was as agent for the defendant and its other predecessor members and "for the benefit of its members." See Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 31, 21 S.Ct. 7, 45 L.Ed. 60. And see Castner v. Coffman, 178 U.S. 168, 184, 20 S.Ct. 842, 848, 44 L.Ed. 1021, where the Court said: "Certainly, the agent cannot be heard to say that he may appropriate to himself the name belonging to the product of his principal, or that he may affix the name to coal for his own purposes, and not for the benefit and advantage of his principal." Ever since a date prior to 1913, there has never been a time when defendant's product has not carried the name Tillamook.[5]

---

5. A comment under § 756 of the Restatement of the Law of Torts, (p. 681) appears to describe the situation which we have here as follows: "Exclusive distribution. The rule stated in this Section applies also to the situation in which one having a trade-mark or trade name for goods makes another the exclusive distributor of those goods, as, for example, where A, the manufacturer of the 'X' camera, appoints B the exclusive distributor of 'X' cameras at wholesale. In such a case, A does not transfer his entire right to B, but he does transfer to B an interest in the 'X' mark which is protected against infringement. One who

Without basing any special argument thereon or seeming to attach significance to it, the appellant suggests that since it had filed the required affidavit under the Lanham Act, 15 U.S.C. 1065, it had obtained incontestibility of that registration.[6] Appellant properly refrains from arguing that this incontestability provision aids it in its action. There is no attempt here to deny the right of the plaintiff to continue to use the name of mark "Tillamook". All that is involved here is the plaintiff's attempt to enjoin the defendant from using its own name on its cheese in the manner previously described, and the right of the defendant to require the appellant to cease from its harassing tactics by which it attempts to prevent customers from purchasing the defendant's product. The provision relating to incontestability is a defensive provision; it has no offensive effect. If plaintiff has attained incontestability of its mark, its registration could not be cancelled by a proceeding to cancel the same. But this does not aid the plaintiff in any claim that it has an exclusive right to the name or mark or that it may rely on the same as a basis for an injunction against the defendant. In John Morrell & Co. v. Reliable Packing Co., 7 Cir., 295 F.2d 314, 316, the court said of incontestability: "This section [15 U.S.C. § 1115] was intended to protect a registrant from having its mark cancelled by a prior user claiming superior rights." The court then went on quoting from other authority: " 'These statements seem to reflect a misconception of the effect of a registration of a mark, the right to the use of which has become incontestable. The effect of "incontestability" is a defensive and not an offensive effect.' " [7]

If the appellant were to press more vigorously its contention that it has some additional standing by reason of the incontestability clause, it might find itself confronted with an additional objection to its standing here, although one that the trial court did not undertake to pass upon. § 33 of the Lanham Act (15 U.S.C. § 1115), which defines the effect and consequences of registration and the incontestability of a registration, notes that incontestability cannot be asserted in certain cases, including the case where it appears "(4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe to users the

thereafter uses the mark on other cameras is subject to liability to both A and B. Such an appointment for exclusive distribution may be limited as to time or territory, or it may be unlimited. The rule stated in this Section applies so long as a valid arrangement of this character exists. When the arrangement is properly terminated, the exclusive right reverts to the manufacturer."

6. That section provides in part as follows: "Except on a ground for which application to cancel may be filed at any time under subsections (c) and (e) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of the publication under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: Provided, That * * * (4) no incontestable right shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise."

7. See also Callmann, Unfair Competition and Trade-Marks, 2d Ed., Vol. 4, § 93.3 (c) (1), pp. 2075–2076: "However the incontestability clause merely precludes an attack upon the validity of a registration after a certain period of time, and it should not be revocable as an aggressive device and in aid of unfair competition or to shield any inherently defective mark."

goods or services of such party, *or their geographic origin.*" (Emphasis added.)

Were the issues so framed, the appellant might be confronted with the proposition that the name or mark "Tillamook" was nothing more than an indication of geographic origin and that no person could acquire any right to such a name sufficient to exclude any other person producing cheese in Tillamook County from the use of that name. In North American Aircoach Sys. v. North American Aviation, 9 Cir., 231 F.2d 205, 210 this court stated: "Geographic names which have connotations of the place of use or manufacture are generally subject to use by all persons or concerns who manufacture or operate in the area. Such a name is in the public domain." Also in National Lead Company v. Wolfe, supra, 223 F.2d at p. 200, this court noted the same rule, saying: "Thus one who manufactures paint in Holland cannot be restrained from selling his product as 'Dutch' paint any more than a watch manufacturer in Switzerland can be prevented from selling his 'Swiss' watches."

The trial judge in this case did not undertake to inquire into the question of the validity of "Tillamook" as a trademark and made no finding as to whether that name or mark had acquired a secondary significance in the sense discussed by the court in North American Air Sys. v. North American Aviation, supra.[3]

Because the trial court assumed without deciding that "Tillamook" could be a valid trade-mark, (it was not and did not purport to be either a collective or a certification mark under 15 U.S.C. § 1054), it had no occasion to refer to some significant decisions in this area including Castner v. Coffman, 178 U.S. 168, 20 S.Ct. 842, 44 L.Ed. 1021; Elgin Nat'l Watch Co. v. Illinois Watch Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; and Wyatt v. Mammoth Cave Development Co., 6 Cir., 26 F.2d 322.

Because no such issue was made or relied upon in the court below we do not decide whether the cases just cited would be applicable here. Nor do we hold that a name, originally descriptive of a geographical area, may not acquire a secondary meaning as identifying a particular producer. We merely hold that a claim of incontestability cannot be made here, for the reasons above indicated.

In our view the findings and conclusions of the trial court were adequate, in no sense erroneous, and they fully sustain the judgment.

In view of these findings the court properly directed that plaintiff be enjoined and restrained from threatening others with actions for unfair competition in connection with their handling of the defendant's cheese bearing the trademark "Tillamook" and from making the assertion to others that the defendant may not use this mark or advertise that its cheese is from Tillamook County or Tillamook, Oregon, and also from insti-

---

**8.** In a footnote to its opinion the court stated: "I will assume, without deciding, the validity of the registered trademark 'Tillamook' (for cheese and butter) under the certificate No. 533,033 and grant it its statutory presumption-of-validity status. If called upon to do so, I would find under the evidence that the trademark 'Tillamook,' when used in connection with the marketing of cheese, has acquired a secondary significance in the kind and quality of the cheese so branded within the purview and holdings of Phillips v. The Governor & Co., etc., 79 F. 2d 971 (9th Cir. 1935); North American Aircoach Sys. v. North American Aviation, 231 F.2d 205 (9th Cir. 1955); and McCabe-Powers Auto Body Co. v.

American Truck Equip. Co., 150 F.Supp. 194 (D.Or.1957)."

This suggested finding would fall far short of a finding of secondary meaning. If, as suggested, Tillamook has acquired a "significance in the kind and quality of cheese," that would no more indicate a secondary significance for trade-mark purposes than the name "Singer" for sewing machines or "aspirin" for a type or kind of medicine. In order to establish a secondary meaning for the name it would be necessary to demonstrate that the buying public identified the name "Tillamook" with appellant. Identifying it only as a certain kind of cheese would not suffice to support a finding of secondary meaning.

tuting any action for trade-mark infringement or unfair competition in connection with the trade-mark Tillamook or with the defendant's marketing of its cheese.

The judgment is affirmed.