**UNITED STATES JAYCEES, a non-profit Missouri Corporation, Appellant,**

v.

**CEDAR RAPIDS JAYCEES, a non-profit Iowa Corporation, Appellee.**

No. 85–2029.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1986.

Decided June 30, 1986.

Carl D. Hall, Jr., Tulsa, Okl., for appellant.

D.J. Smith, Cedar Rapids, Iowa, for appellee.

Before ARNOLD, Circuit Judge, TIMBERS, Senior Circuit Judge,[*] and FAGG, Circuit Judge.

ARNOLD, Circuit Judge.

This is a trademark infringement action brought by the United States Jaycees (USJ) under 15 U.S.C. § 1114 to enjoin its affiliate, Cedar Rapids Jaycees (CRJ), from using the federally protected trademark "Jaycees." The United States District Court for the Northern District of Iowa [1] granted summary judgment to the Cedar Rapids Jaycees, 614 F.Supp. 515. We affirm.

## I.

Plaintiff United States Jaycees is a non-profit civic and service organization. Cedar Rapids Jaycees has been chartered since 1945 as a local affiliate of the USJ. The national organization had since its founding in 1920 defined itself as a "young men's civic organization" and had limited its regular voting membership to "young men between the ages of eighteen (18) and thirty-five (35)." [2] Local affiliate organizations were required to adhere to these membership requirements and otherwise conform their by-laws to the rules of the USJ. Women were allowed to join the Jaycees as "associate members" and were permitted to participate in various projects and activities, but were barred from voting in organization elections or serving in positions of leadership. For a number of years beginning in the 1970's the subject of admitting women as full members of the Jaycees was a matter of debate and discussion within the Jaycees. Several local organizations began on their own to admit women. The national organization resisted their initiatives, and litigation ensued. During this period the national membership three times voted against admission of women.

In May of 1982 the Cedar Rapids Jaycees amended its local by-laws to admit women to full voting membership. Subsequently, the Executive Committee of USJ informed CRJ that if the local organization did not conform its admission requirements to those of USJ, the Executive Committee would invoke By-law 4–4I, which had been promulgated earlier that year. By-law 4–4I empowered the Executive Committee to revoke the license of any local affiliate to use the "Jaycees" trademark if the local affiliate did not comply with the national by-laws. CRJ refused to comply, and USJ ultimately revoked CRJ's license to use the trademark. USJ never at any time revoked the charter of CRJ; it continued to accept dues payments from local chapter members, and the Cedar Rapids chapter continued to receive individual and group awards from the national and state organization.

On 6 March 1984 the District Court enjoined CRJ from using the "Jaycees" trademark. On 2 October 1984 the injunction was stayed pending appeal to this Court. Meanwhile, the USJ had, in its national convention, ended the long-standing "all-male" membership policy. This action was taken in response to the opinion of the Supreme Court of the United States in *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), hold-

---

[*] The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

[1.] The Hon. Edward J. McManus, Senior United States District Judge for the Northern District of Iowa.

[2.] The requirement, as it applies to local affiliates, was found in By-law 4–4A. On 16 August 1984 the national membership voted to substitute the words "young persons" for the words "young men," thus opening the Jaycees to full membership for women. This language is identical to that used in the corresponding Cedar Rapids Jaycees by-law as amended in May 1982.

ing that the State of Minnesota could constitutionally forbid USJ to exclude women from full membership.

On appeal, this Court remanded to the District Court for further proceedings. The trial court was directed to consider whether the USJ is a public accommodation under the Iowa Civil Rights Act, Iowa Code § 601A.2(10) and (7) (a statute similar to the Minnesota law upheld in *Roberts*); and whether, if so, the USJ's revocation of CRJ's license to use the trademark was nonetheless valid. *United States Jaycees v. Cedar Rapids Jaycees,* 754 F.2d 302 (8th Cir.1985).

After remand, the District Court granted summary judgment to CRJ. The Court held that (1) USJ is a public accommodation within the reach of the Iowa Civil Rights Act; (2) its lawsuit against CRJ violated the Iowa law since it was instituted in retaliation against CRJ for admitting women, a protected class under the Iowa law; and (3) even if the revocation was valid, the requested injunction would be denied since under 15 U.S.C. § 1116 injunctions must issue according to the principles of equity, and USJ was undeserving of equitable relief since it had dealt unjustly with CRJ.

## II.

The United States Jaycees is the owner of the service mark "Jaycees," No. 746,757,

registered on 12 March 1963. This mark is incontestable within the meaning of 15 U.S.C. § 1065, since it has been in use for five consecutive years subsequent to the date of registration, is still in use, and has not been challenged on any of the grounds provided in § 1065.

The Cedar Rapids Jaycees has been a local affiliate of the USJ since 1945. Like all local affiliates, CRJ has been afforded a license to use the "Jaycees" service mark by the USJ since its original charter. This license arrangement was formally set out by amendment to the USJ by-laws in 1982, immediately before this lawsuit arose.[3]

On 12 January 1984 the Executive Committee of the USJ exercised its power under the by-laws and formally revoked CRJ's license to use the Jaycees trademark. USJ does not seriously contend that this revocation was for any reason other than that the CRJ had violated the USJ by-laws by admitting women to voting membership.

USJ undoubtedly had the right, in the abstract, to revoke CRJ's license. The by-law which regulated relations between the national organization and its affiliates clearly set out the terms under which the trademark could be used and the terms under which permission could be taken away.

**3.** USJ By-law 4.4I provides:

Every Local Organization Member in good standing and in compliance with these by-laws is granted a revocable license to utilize the trademarks, service marks, and collective membership marks of The United States Jaycees, including "JAYCEE", "JAYCEES", "J.C.", "J.C.'s", "JUNIOR CHAMBER", and "JUNIOR CHAMBER OF COMMERCE" in connection with its activities as a member of The United States Jaycees. All such usages shall be in compliance with the quality control requirements of the United States Jaycees.
2. The license granted in paragraph 1 above shall be subject to control by the Executive Committee in respect to the nature and quality of the goods or services in connection with which the marks are used. Said licenses may be revoked at any time by action of the Executive Committee for non-compliance by the Local Organization Member with these by-laws or for non-compliance by the Local Organization Member with the quality control requirements

of The United States Jaycees. Any revoked license may be reinstated by the Executive Committee. All decisions of the Executive Committee with respect to the revocation or reinstatement of a license to use trademarks, service marks, or collective membership marks of The United States Jaycees shall be final.
3. The license granted in paragraph 1 above is terminated immediately and automatically when any Local Organization Member disaffiliates, or when its charter is revoked or suspended for any reason.
4. In the event the license to a Local Organization Member is revoked under paragraph 2 above or terminated under paragraph 3 above, the Local Organization Member, and those in active consort therewith, shall immediately cease the use of any trademark, service mark, or collective membership mark belonging to The United States Jaycees, including those marks in paragraph 1 above, and any marks confusingly similar therewith.
5. ...

The central question which is presented for our determination is whether the District Court erred in denying the injunctive relief requested by USJ under 15 U.S.C. § 1116(a), which provides:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have the power to grant injunctions, according to the principles of equity and under such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.

 It is generally said that once infringement of a trademark is shown, the owner of the mark is entitled to injunctive relief. Indeed, when the infringement is clear and deliberate, such relief is denied only in the most unusual of cases. See *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614–15 (7th Cir.1965). However, the grant of injunctive relief is not a ministerial act which must flow as a matter of course. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982). A court of equity has a duty to consider not only the nature of the asserted right, but also the conduct of the plaintiff in seeking to enforce that right, see, *e.g.*, *Knights of the Ku Klux Klan v. Strayer*, 34 F.2d 432, 434 (3d Cir. 1929); the burden that the requested relief will impose on the defendant (in proportion to the injury which the defendant has caused), see, *e.g.*, *Puritan Sportswear Corp. v. Puritan Fashions Corp.*, 232 F.Supp. 550, 555 (S.D.N.Y.1964); and the impact on the public interest, see *e.g.*, *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 493, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942). The court ought also take care that its decree not be used to promote inequitable ends. It is still, even in this modern day of merged practice, a court of conscience, and it ought not grant equitable relief for an unconscionable purpose, however strong the legal rights asserted may be.

 USJ argues that the discretion of a court in granting or withholding an injunction is severely limited when the trademark in question has, like this one, become incontestable. It relies on the language of 15 U.S.C. § 1115(b) and on the recent Supreme Court case of *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). However, in doing so, USJ apparently confuses the wrong with the remedy. Section 1115(b) limits the defenses which can be asserted against an action for infringement of an incontestable mark. *Park 'N Fly* denied the existence of any distinction between defensive and offensive uses of incontestability, and it held that an infringement action could not be defended on the ground that a mark, otherwise incontestable under § 1115(b), was merely descriptive, since that defense was not one of those specifically enumerated in § 1115(b). While the Court did say that the equitable power granted under § 1116 does not expand the seven enumerated defenses to the *validity* of an incontestable mark under § 1115(b), it specifically did not address the question raised here: "whether traditional equitable defenses such as estoppel or laches are available in an action to *enforce* an incontestable mark." 105 S.Ct. at 666 n. 7 (emphasis added). See also 105 S.Ct. at 673 and n. 22 (Stevens, J., dissenting). We do not believe that the limitations in § 1115(b) relating to the validity or ownership of a mark also limit the discretion of the court to give equitable relief appropriate to the circumstances of each case. To do so would indeed make injunctive relief a ministerial act, *supra* at 6, and wipe away the discretion which is inherent in the equitable power.

 In the present case, the ownership and validity of the registered mark "Jaycees" are not at issue. The restrictions on defenses which are found in § 1115(b) are irrelevant since they come into play only when the validity of the mark is questioned. Here, CRJ's only transgression against USJ was in choosing to admit wom-

en to full voting membership in the organization two years before the national body decided to follow the same course. USJ's subsequent amendment of its by-laws, to allow women members has rectified any conflict in the rules or operating procedures of the two organizations, but apparently did not heal the rancor between the two groups. USJ has persisted in this lawsuit even after the amendment of its by-laws and even while continuing to receive from the Cedar Rapids group the dues payments, new members, and good will which flow from their interrelationship. The nub of USJ's argument to this Court is, in effect: "It is our trademark; we have a right to choose who uses it, even if we do so arbitrarily and vindictively, and the court must lend a hand...." We agree that USJ normally has a right to choose who uses its trademark, but disagree that the courts must in all instances assist and enforce those choices when the only purpose to be served is punishment of an otherwise productive and conforming member simply because the member was on the prevailing side in a past internal policy dispute.

If the remedy being sought were damages for the injury caused to USJ by CRJ's past breach of its by-laws, and CRJ's past (pre-1984) nonconforming use of its trademark, an entirely different issue would be presented. But that is not what we have here: this appeal calls in question only the propriety of injunctive relief, and we hold, in the present unusual circumstances, that to forbid CRJ for the indefinite future to use the name "Jaycees" would not be consistent with "the principles of equity" as that phrase is used in 15 U.S.C. § 1116. It is therefore unnecessary to decide whether the Jaycees is a place of public accommodation under Iowa law. Even if it is not, USJ has now voluntarily abandoned its no-women policy, and it has no just title to the aid of a court of equity in punishing CRJ for having done the same thing two years earlier.

Affirmed.