847 F.2d 1398
 57 USLW 2056, 7 U.S.P.Q.2d 1082
 PYRODYNE CORPORATION, a Washington corporation,
Plaintiff-Appellant-Cross-Appellee,
v.
PYROTRONICS CORPORATION, a California corporation,
Defendant-Appellee-Cross-Appellant.
 Nos. 87-3847, 87-4070.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1988.
Decided June 1, 1988.
 
 Francis A. Utecht, Fulwider, Patton, Rieber, Lee & Utecht, Long Beach, Cal., for defendant-appellee-cross-appellant.
 James R. Uhler, Christensen, O'Connor, Johnson & Kindness, Seattle, Wash., for plaintiff-appellant-cross-appellee.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before TANG and CANBY, Circuit Judges, and THOMPSON,* District Judge.
 TANG, Circuit Judge:
 
 
 1
 Pyrodyne appeals the district court's denial of its motion for preliminary injunction to order Pyrotronics to cease infringing Pyrodyne's trade name, Red Devil Fireworks, in Washington, Oregon, Alaska, Northern Idaho and Montana. Pyrotronics, in turn, appeals the district court's denial of its motion for preliminary injunction in the same action. The dispute concerns ownership of and rights to the name "Red Devil" as used in connection with the sale of fireworks. Pyrotronics owns an incontestable trademark in the name Red Devil. Pyrodyne asserts ownership rights in the trade name Red Devil based upon its exclusive use of the name in its trade area for more than fifteen years. We must decide whether Pyrodyne can use the equitable defenses of laches and estoppel to defend against Pyrotronics' incontestable trademark registration.
 
 FACTUAL BACKGROUND
 
 2
 Pyrotronics is the owner of Federal Trademark Registration No. 857,753 for the trademark "Red Devil" for fireworks. The registered mark has become incontestable under Sec. 15 of the Lanham Trademark Act, 15 U.S.C. Sec. 1065 (1982). In 1970 Pyrotronics' Chairman of the Board and principal shareholder, Patrick Moriarity, was also Chairman and principal shareholder of Zebra Distributing Co., Inc. (Zebra), which later became Pyrodyne. On July 17, 1970, Pyrotronics' Board of Directors unanimously consented to Zebra's use of the name Red Devil in Zebra's corporate name in the Pacific Northwest Territory trade area, where Pyrotronics had never before operated.[1] Zebra thereafter changed its name to Red Devil Fireworks Co. of Washington, Inc. In 1971 the corporate name was again changed, to Pyrodyne Corporation. Pyrodyne has done business under the trade name Red Devil continuously since 1970.
 
 
 3
 Between 1970 and 1985 the Directors, officers and shareholders of Pyrodyne and Pyrotronics were closely intertwined. During much of that period Pyrodyne purchased fireworks for resale from Pyrotronics. In 1977, 1978 and 1979 Pyrotronics assisted Pyrodyne in purchasing fireworks directly from the Orient. During the past ten years Pyrodyne has expended over $500,000 to advertise and promote fireworks sales under the name Red Devil.
 
 
 4
 On January 2, 1985, Byington, Pyrodyne's president, wrote to Hescox, Pyrotronics' president, requesting that Hescox reconfirm the grant from Pyrotronics giving Pyrodyne the right to use the name Red Devil. On January 10, 1985, Hescox responded by letter, reconfirming the 15-year old agreement whereby Pyrotronics granted Pyrodyne permission to use the name Red Devil. In late 1985, however, Pyrotronics opened an office in Spokane, Washington and began operations under the name Red Devil Fireworks Company. Since then Pyrotronics has expanded its use of the Red Devil name in Pyrodyne's trade areas.
 
 PROCEDURAL BACKGROUND
 
 5
 On March 3, 1986, Pyrodyne's attorney requested that Pyrotronics cease using the Red Devil name in Pyrodyne's trade areas. When Pyrotronics continued its operations, Pyrodyne filed suit in district court for trade name infringement, unfair competition and deceptive trade practices. Jurisdiction in the district court was based on diversity of citizenship. Pyrotronics answered and counterclaimed. Its counterclaim was based on its incontestable registration under the Lanham Act. Pyrodyne's reply to the counterclaim raised the defenses of laches and estoppel.
 
 
 6
 On June 6, 1986, Pyrotronics filed for protection under Chapter 11 of the Bankruptcy Code, and Pyrodyne's action was automatically stayed. However, Pyrotronics' sales efforts in Pyrodyne's trade areas expanded, and on December 1, 1986, the bankruptcy court granted Pyrodyne relief from the automatic stay to allow it to pursue its action in district court. Pyrodyne then filed a motion for preliminary injunction in district court.
 
 
 7
 The district court denied the motion, concluding that in light of Pyrotronics' incontestable trademark registration Pyrodyne had failed to demonstrate probable success on the merits. The district court based its conclusion on its holding "that the incontestability provisions of the Lanham Act should be strictly construed as eliminating equitable defenses." Accordingly, the district court rejected Pyrodyne's argument that its permissive right to use the Red Devil trade name over the past sixteen years constituted a legally enforceable, irrevocable consent agreement or that laches barred Pyrotronics from revoking its consent. Pyrodyne filed a notice of appeal on April 29, 1987.
 
 
 8
 On May 7, 1987, Pyrotronics filed its motion for preliminary injunction, seeking to enjoin further infringement of Pyrotronics' registered trademark by Pyrodyne. The district court denied Pyrotronics' motion on the basis that Pyrodyne's April 29 notice of appeal divested the district court of jurisdiction over the matters appealed. Pyrotronics filed a notice of appeal from that ruling on July 20, 1987.
 
 ANALYSIS
 
 9
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1) (Supp.1987). We will reverse the denial of a preliminary injunction only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.1987).
 
 
 10
 Registration of an incontestable trademark "shall be conclusive evidence of the registrant's exclusive right to use the registered mark" subject to the conditions and limitations of 15 U.S.C. Sec. 1065 (Supp.1988)[2] and the defenses enumerated in 15 U.S.C. Sec. 1115(b)(1982).[3] It is undisputed that Pyrotronics owns an incontestable trademark in the name Red Devil. The mark is not subject to any of the conditions or enumerated defenses in 15 U.S.C. Secs. 1065 or 1115(b). Based on the equitable defenses of laches and estoppel, Pyrodyne challenges Pyrotronics' assertion that it has the exclusive right to use the Red Devil name in the Pacific Northwest Territory. We hold that Pyrodyne's equitable defenses should be considered in evaluating Pyrotronics' claim that it had the sole right to use the trade name "Red Devil" because of its incontestable trademark.
 
 
 11
 In Prudential Ins. Co. v. Gibraltar Financial Corp., 694 F.2d 1150, 1153 (9th Cir.1982), cert. denied, 463 U.S. 1208, 103 S.Ct. 3538, 77 L.Ed.2d 1389 (1983), this circuit ruled that the defense of laches is available against an incontestable mark. Prudential sought to enjoin Gibraltar's use of Prudential's corporate symbol, a picture of the Rock of Gibraltar. Gibraltar had used the rock logo for 28 years. Prudential argued that only the defenses enumerated in 15 U.S.C. Sec. 1115(b) could apply against incontestable marks. Gibraltar argued that 15 U.S.C. Sec. 1116 allows courts to grant injunctions "according to the principles of equity."[4] We stated:
 
 
 12
 This court considers incontestability to be a defensive provision only. It helps protect the registrant's mark from cancellation but is of no offensive use. Incontestability does not preclude a defense of laches. Tillamook County Creamery Ass'n. v. Tillamook Cheese and Dairy Ass'n, 345 F.2d 158, 163 (9th Cir.), cert. denied, 382 U.S. 903 [86 S.Ct. 239, 15 L.Ed.2d 157] (1965).
 
 
 13
 Prudential, 694 F.2d at 1153. We also noted that the availability of a laches defense narrows the protection afforded trademarks, and that for policy reasons this circuit has chosen to read the Lanham Act narrowly. Id. [citing Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 918 (9th Cir.), cert. denied, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981) ].
 
 
 14
 In Park'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 205, 105 S.Ct. 658, 667, 83 L.Ed.2d 582 (1985), the Supreme Court held "that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive." The Court disapproved this circuit's decision in Tillamook County Creamery, supra, that a registrant may not rely on incontestability as an offensive weapon to enjoin the use of a mark by others and instead can only use an incontestable mark defensively. Park'N Fly, 469 U.S. at 203, 105 S.Ct. at 666. However, Park'N Fly explicitly left open the question "whether traditional equitable defenses such as estoppel or laches are available in an action to enforce an incontestable mark." Id. at 203, n. 7, 105 S.Ct. at 666, n. 7.
 
 
 15
 We have reexamined Prudential in light of Park'N Fly. We hold that Prudential mandates that equitable defenses can be considered in an action to enforce an incontestable mark. See also E-Systems, Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir.1983) (laches can bar recovery in a trademark action where injunctive relief is sought); cf., Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir.1987) (equitable defense of unclean hands is a defense to a Lanham Act trade dress infringement suit). Equitable defenses are personal defenses which do not attack the validity of a mark's registration. Injunctions should issue "according to the principals of equity." 15 U.S.C. Sec. 1116.
 
 
 16
 Our decision is guided by United States Jaycees v. Cedar Rapids Jaycees, 794 F.2d 379 (8th Cir.1986). The Jaycees court observed that although the owner of an incontestable mark is generally entitled to injunctive relief, the grant of injunctive relief is not a ministerial act flowing as a matter of course. Id. at 382 [citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803-04, 72 L.Ed.2d 91 (1982) ]. It distinguished Park'N Fly, stating: "While the [Park'N Fly] Court did say that the equitable power granted under Sec. 1116 does not expand the seven enumerated defenses to the validity of an incontestable mark under Sec. 1115(b), it specifically did not address" the question whether traditional equitable defenses are available in an action to enforce an incontestable mark. United States Jaycees, 794 F.2d at 382.
 
 
 17
 When ruling on Pyrodyne's preliminary injunction motion, the district court concluded that Pyrodyne had failed to show probable success on the merits. See Rodeo Collections Ltd., 812 F.2d at 1217 ("To qualify for a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of the hardships tips sharply in the moving party's favor.") The district court's ruling was explicitly based on its finding that equitable defenses were unavailable to Pyrodyne. We hold that equitable defenses should be considered in an action to enforce an incontestable mark. It follows that equitable defenses should be considered in evaluating the probability of the success of Pyrodyne's claim against Pyrotronics when Pyrotronics' defense, (as well as its counterclaim), is based on the incontestability of its trademark. The district court's denial of Pyrodyne's preliminary injunction motion was based on an erroneous legal standard and must be reversed. Id. Accordingly, we remand to the district court for reconsideration using the correct legal standard.
 
 
 18
 In a separate appeal Pyrotronics argues that the district court's denial of its motion for preliminary injunction was in error. We disagree. The district court properly ruled that Pyrodyne's filing of notice of appeal on April 29, 1987, divested the district court of jurisdiction over the matters appealed. McClatchy Newspapers v. Central Valley Typographical, etc., 686 F.2d 731, 734 (9th Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). A district court does retain the power to preserve the status quo while the case is pending in the appellate court; however, it cannot finally adjudicate substantial rights involved in the appeal. Id., at 734-35.[5] The district court properly concluded that it was without jurisdiction to rule on Pyrotronics' motion while the issue of the scope of Pyrodyne's defenses was pending in this court.
 
 CONCLUSION
 
 19
 Under Prudential incontestability does not preclude equitable defenses. We do not reach the merits of the dispute. The cause is remanded to the district court for reconsideration of Pyrodyne's motion for preliminary injunction using the correct legal standard.
 
 
 20
 REVERSED in part, AFFIRMED in part, and REMANDED.
 
 
 
 *
 Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 The Pacific Northwest Territory includes Washington, Oregon, Alaska, Idaho and Montana
 
 
 [2]
 15 U.S.C. Sec. 1065 provides:
 Sec. 1065. Incontestability of right to use mark under certain conditions
 Except on a ground for which application to cancel may be filed at any time under subsections (c) and (e) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: Provided, That
 (1) there has been no final decision adverse to registrant's claim of ownership of such mark for such goods or services, or to registrant's right to register the same or to keep the same on the register; and
 (2) there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of; and
 (3) an affidavit is filed with the Commissioner within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still in use in commerce, and the other matters specified in subsections (1) and (2) of this section; and
 (4) no incontestable right shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise.
 Subject to the conditions above specified in this section, the incontestable right with reference to a mark registered under this chapter shall apply to a mark registered under the Act of March 3, 1881, or the Act of February 20, 1905, upon the filing of the required affidavit with the Commissioner within one year after the expiration of any period of five consecutive years after the date of publication of a mark under the provisions of subsection (c) of section 1062 of this title.
 The Commissioner shall notify any registrant who files the above-prescribed affidavit of the filing thereof.
 
 
 [3]
 15 U.S.C. Sec. 1115(b) provides:
 (b) If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defenses or defects is established:
 (1) That the registration or the incontestable right to use the mark was obtained fraudulently; or
 (2) That the mark has been abandoned by the registrant; or
 (3) That the registered mark is being used, by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services in connection with which the mark is used; or
 (4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin; or
 (5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use it proved; or
 (6) That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: Provided, however, That this defense or defect shall apply only for the area in which the mark was used prior to such registration or such publication of the registrant's mark; or
 (7) That the mark has been or is being used to violate the anti-trust laws of the United States.
 
 
 [4]
 15 U.S.C. Sec. 1116 provides in pertinent part:
 Sec. 1116. Injunctive relief.
 (a) Jurisdiction; ...
 The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.....
 (emphasis supplied).
 
 
 [5]
 Pyrotronics agrees that McClatchy would normally control, but argues that the district court abused its discretion by failing to grant a conditionally delayed injunction. Pyrotronics stipulated that if the preliminary injunction was granted it would only become effective if and when this court ruled that laches and estoppel are not available to Pyrodyne; if this court ruled laches and estoppel are available, the preliminary injunction would have no effect. Because we hold that equitable defenses are available to Pyrodyne, that issue is now moot. We note, however, that a "conditionally delayed" injunction makes little sense in light of a preliminary injunction's purpose to avoid irreparable injury unless immediate action is taken. William Inglis v. ITT Continental, 526 F.2d 86, 88 (9th Cir.1975)