**NATIONAL GEOGRAPHIC SOCIETY, Plaintiff,**

v.

**CONDE NAST PUBLICATIONS INC., Defendant.**

No. 87 Civ. 4228 (TPG).

United States District Court, S.D. New York.

June 2, 1988.

Thomas Soybel, Proskauer, Rose, Goetz & Mendelsohn, New York City, J. Timothy Hobbs, Mason, Fenwick & Lawrence, Washington, D.C., for plaintiff.

Jay E. Gerber, Davis, Markel & Edwards, New York City, for defendant.

## OPINION

GRIESA, District Judge.

This is an action under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under the New York Anti–Dilution Law, N.Y.Gen.Bus.Law § 368–d (McKinney's 1964). National Geographic Society publishes a magazine called *National Geographic Traveler*. Conde Nast publishes a magazine called *Conde Nast's Traveler*. National Geographic Society claims that it has a protected right to the "trade dress" of its magazine, and that this right is infringed by the trade dress of Conde Nast's magazine.

The court has ruled at an earlier stage that the Anti–Dilution Law claim is without merit. This opinion will deal solely with the Lanham Act claim.

The action has been tried to the court without a jury. During the trial and in certain proceedings subsequent to the trial, the issues have been greatly simplified. This opinion will deal only with the relatively few issues remaining to be resolved.

### Facts

National Geographic Society is best known for publishing the monthly *National Geographic* magazine. This magazine is a century old. In March 1984 it commenced publication of *National Geographic Traveler*, a quarterly magazine. It is one of a relatively few prominent nationally circulated travel magazines in the United States. Its circulation is in the 800,000 range.

Conde Nast is a publisher of numerous magazines, including *Vogue, House & Garden* and *Gourmet.* In September 1987 Conde Nast started publication of *Conde Nast's Traveler*, a monthly travel magazine. It has achieved considerable success and now has a circulation in the range of 800,000.

Each magazine carries the full name on the cover—*National Geographic Traveler* in one case, and *Conde Nast's Traveler* in the other. However, in each case the company name is smaller than the word *Traveler.*

Although each magazine has its unique editorial character, both deal with the general subject of travel. The difficulty in the case is created by the fact that the word *Traveler* is affixed to these two travel magazines, and that in addition to the presence of this word there are other features of the two magazines creating an overall appearance which is rather similar.

Virtually all of the circulation of *National Geographic Traveler* is by mail subscription. The same is true for most of the circulation of *Conde Nast's Traveler,* although the latter magazine is sold through newsstands also. To some substantial degree the circulation efforts of both magazines are directed to the same reading public.

The evidence in this case contains admissions by National Geographic Society that it does not claim a protectible right in the name Traveler standing alone, and that its claim to protection relates to the name *National Geographic Traveler* and, as in the present case, the trade dress of the magazine including that full name.

In 1984 National Geographic Society registered the trademark *National Geographic Traveler* with the United States Patent and Trademark Office, and made the following disclaimer:

> No claim is made to the exclusive right to use "Traveler", apart from the mark [National Geographic Traveler] as shown.

In 1984 a complaint was made by an English company, Wexas International, against National Geographic Society. Wexas published a magazine called "The Traveller." Wexas wrote National Geographic Society complaining that its trademark would be infringed by *National Geographic Traveler.* Counsel for National Geographic Society responded that the word *Traveler* or *Traveller* is a common English word used in a number of titles of publications both in the United States and abroad, and denied that the title *The Traveller* could be protected. Moreover, National Geographic Society asserted that it intended to use the word *Traveler* only as part of the full name of its magazine, *National Geographic Traveler.*

Turning to the Conde Nast magazine, the Conde Nast witnesses have stated that they do not consider the name of their magazine to be *Traveler,* but to be *Conde Nast's Traveler.* It is their purpose and desire to have the magazine referred to by the full title, because the inclusion of the name *Conde Nast* lends great prestige to the magazine, in their view. According to this testimony, Conde Nast wishes to make the full title of the magazine perfectly clear to the public, and has no desire to have its magazine confused with any other, including *National Geographic Traveler.*

As will be described hereafter, the court does not believe that Conde Nast adopted a trade dress for its magazine which went far enough in emphasizing the full name

Conde Nast's Traveler so as to distinguish this magazine from National Geographic Traveler. However, there is no evidence from which the court could conclude that Conde Nast acted willfully or with the intention of trading on the good name of National Geographic Society.

National Geographic Society has come forward with evidence of confusion. The Society does not rely on survey evidence but upon about 120 instances of actual confusion. These deal almost entirely with advertising materials sent through the mail, either to solicit new subscriptions or to obtain renewal subscriptions. There is little or no evidence of any confusion created by the "trade dress" of the two magazines themselves. For instance, a subscriber to National Geographic Traveler would receive a renewal notice for that magazine, and then would receive a solicitation to subscribe to Conde Nast's Traveler. The person would be confused and send money to Conde Nast thinking that he was renewing his subscription to the National Geographic publication. Although he had, of course, seen National Geographic Traveler since he subscribed to it, he had not seen the actual magazine Conde Nast's Traveler, but only the advertising material sent through the mail.

It is readily apparent that the advertising materials sent through the mail have caused confusion. For instance, in some parts of the Conde Nast materials the words Conde Nast's were microscopic in size as compared with the large word Traveler. In fairness, however, it must be said that the same thing has been true to some extent of the National Geographic material —i.e., in some items of mailing material the words National Geographic were extremely small as compared with the word Traveler.

With regard to the usage of the name Traveler in the titles of various publications, the evidence shows that there are publications by the name of AAA Traveler, The American Traveler, Amoco Traveler, Business Traveler, Interstate Traveler, Sophisticated Traveler, and others.

### Voluntary Changes by Conde Nast

During the course of the trial, and subsequent to the trial, Conde Nast has advised the court that it is willing to make certain changes in the cover of its magazine as well as in the advertising materials sent through the mail.

The concession about the advertising material occurred first. After the presentation of the evidence about the instances of confusion, Conde Nast came forward with a proposed revision of its mail advertising materials which would give prominence to the words Conde Nast's and make the full name Conde Nast's Traveler entirely clear.

During the argument at the end of the trial, the court indicated that it found a substantial problem with the cover of the magazine. The court expressed the view that in the cover, as in some of the mailing materials, the reference to Conde Nast was so small and so obscure, and the word Traveler so dominating, that the title of the magazine in no way appeared to be Conde Nast's Traveler. It appeared to be simply Traveler.

This discussion led the parties to submit to the court various proposals for altering the cover of the Conde Nast magazine. Conde Nast has now agreed that it will use a revised magazine cover. The possessive in the name Conde Nast's will be eliminated. The title of the magazine will be Conde Nast Traveler. More importantly, the words Conde Nast are substantially enlarged so that all elements of the full title are bold and clear.

### Discussion

It is well to keep in mind the exact nature of the case. National Geographic Society is not suing to protect a right to the exclusive use of the word Traveler. It is suing to protect its use of the composite elements going into the "trade dress" of its magazine.

Confusion arises because the word Traveler is prominent in the trade dress of both magazines, particularly in that of Conde Nast. Also, the problem which National Geographic Society sees with the Conde

Nast magazine relates mainly to the word *Traveler,* albeit in the context of the other elements of the trade dress. The relief sought by National Geographic Society in this litigation is the elimination of the word *Traveler* from the Conde Nast magazine.

Conde Nast vigorously opposes the effort to prevent it from using the word *Traveler,* although, as already indicated, Conde Nast is amenable to other changes in the trade dress of its magazine and in its advertising materials.

The solution to the problems in this case emerges quite clearly when one adheres rigorously to a proper definition of the issues. This means focusing on the entire trade dress of the two magazines rather than solely upon the word *Traveler.* The issues are as follows:

1. Does National Geographic Society have the right to protection of the trade dress of its magazine?

2. If so, has Conde Nast infringed that right?

3. If there has been infringement, what is the appropriate remedy?

Prior to dealing with these questions, it is appropriate to affirm that National Geographic Society does not have the exclusive right to use the word *Traveler* in connection with a magazine title. National Geographic Society admitted as much in its correspondence with Wexas in 1984 and in its 1984 filing with the Patent and Trademark Office. Moreover, the fact that National Geographic Society pleaded a trade dress claim in the present case rather than a claim based on an alleged trademark right in the name *Traveler* is further recognition that it has no exclusive right in this word. Finally, the evidence shows that the word *Traveler* is used as part of the title of various publications.

■ Coming now to the first question posed above, Conde Nast concedes National Geographic Society's right to protection of the trade dress of *National Geographic Traveler.* Undoubtedly such a right exists. In addition to the title *National Geographic Traveler,* the trade dress includes the name *National Geographic Society,* as well as a yellow rectangle symbolizing the Society's premier publication, *National Geographic,* and the notation *1888–1988,* referring to the fact that the latter magazine is a century old. Clearly, no one but National Geographic Society has the right to issue a publication with a trade dress containing these elements.

■ As to the second of the above questions, although Conde Nast has never formally conceded infringement, the contest on this issue has greatly subsided. The issue, of course, is likelihood of confusion. On this issue a district court is required to consider the factors set forth in *Polaroid Corp. v. Polarad Electronic Corp.,* 287 F.2d 492 (2d Cir.1961), to the extent they are relevant. This court has done so. However, as the court in *Polaroid* recognized, each case tends to have its own unique facts. That is surely true in the present case.

The considerations relevant to resolving the confusion issue here are as follows. The trade dress of plaintiff's magazine, *National Geographic Traveler,* clearly identifies the source of that publication. The same is not true of defendant's magazine, *Conde Nast's Traveler,* in its present form. The word *Traveler* is so large and the words *Conde Nast's* are so small that identification of the source of the magazine is likely not to be noticed.

Let us suppose that a person sees the magazine *National Geographic Traveler.* Shortly thereafter he sees a magazine of similar size and appearance, apparently named *Traveler.* There is the phrase *Conde Nast's* on the cover, but it is so obscure that it does not come to his attention. It is the view of the court that such a person could be confused into thinking that the second magazine came from the same source as the first, (1) because of the similar appearance of both, (2) because they both carry the word *Traveler,* and (3) because clear visual identification of the second magazine with *Conde Nast* is not made.

The court is cognizant of the fact that almost all of the instances of actual confu-

sion presented by National Geographic Society related to the mailing materials rather than the magazines themselves. However, the instances involving the mailing materials do support the idea that there is a risk of confusion between those two magazines unless their full names, indicating their sources, are made clear.

The court finds that an appreciable number of ordinarily prudent purchasers are likely to be confused as to the source of the Conde Nast magazine unless appropriate alteration is made in the trade dress of that magazine.

This brings us to the question of the appropriate remedy.

■ The court rejects the argument of National Geographic Society that there must be an injunction prohibiting Conde Nast from using the word *Traveler* in connection with its magazine. The court has broad discretion to determine the appropriate remedy. *Oral–B Laboratories v. Mi-Lor Corp.*, 810 F.2d 20, 24 (2d Cir.1987); *Perfect Fit Industries v. Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir.1981). It would appear to be the better part of discretion to use the least disruptive remedy which will accomplish the purpose of preventing confusion.

■ One disadvantage with National Geographic Society's proposal to forbid the use of the word *Traveler* is that such a remedy would smack of giving National Geographic Society something to which it is not entitled—*i.e.,* a protected right in the single word *Traveler.* It would forbid Conde Nast from using the word *Traveler* in a way which other publications apparently have the unchallenged right to do.

An appropriate remedy in the present case involves fashioning a trade dress for the Conde Nast magazine which will clearly display the full title of that magazine. Since that full title includes the company name, this serves as an explicit description of the origin of the magazine.

Conde Nast has come forward with a re-designed magazine cover which accomplishes these purposes in a satisfactory manner. The name is to be changed from *Conde Nast's Traveler* to the more easily pronounced title of *Conde Nast Traveler.* The words *Conde Nast,* while somewhat smaller than the word *Traveler,* are to be large enough to be perfectly plain. The new cover is a marked improvement over the design which occasioned this lawsuit. In the view of the court, the new cover constitutes a reasonable revision to eliminate the risk of confusion.

As the court understands it, Conde Nast undertakes to design its advertising and promotional materials consistently with the re-designed magazine cover. Conde Nast has already taken one step in this direction and has revised certain mail advertising materials. This should set the pattern for other similar materials.

■ Conde Nast argues that, since it has agreed to changes in its magazine cover and mailing materials, the court has no need to enter an injunction, citing *815 Tonawanda Street Corp. v. Fay's Drug Co.,* 842 F.2d 643 (2d Cir.1988). The case provides no support for such a contention. In the present case, the agreement by Conde Nast came only in response to National Geographic Society's lawsuit. National Geographic is entitled to the protection of an injunction.

### Damages

In its trial brief, National Geographic Society presented a theory of damages based upon corrective advertising expenditures. No evidence was presented in support of such a theory.

National Geographic Society's post-trial memorandum does not refer to damages, but requests only injunctive relief. Considering all the circumstances, no award of damages should be made.

### Conclusion

The parties should settle a judgment embodying the rulings in this opinion. The judgment should have attached to it examples of the specific revised magazine cover

and revised mail advertising material which are approved by the court.

SO ORDERED.