## In re CIRCUIT BREAKER LITIGATION.

### No. CV 88–03012 RG (Gx).

United States District Court,
C.D. California.

Aug. 22, 1994.

Gregory P. Stone, Ted Dane, Munger, Tolles & Olson, Los Angeles, CA, for plaintiff Westinghouse Elec. Corp.

George A. Oakes, Alan H. Stanfill, Throckmorton, Beckstrom & Oakes, Pasadena, CA, for defendants General Circuit Breaker & Elec. Supply, Inc.; Panelboard Specialties Wholesale Elec., Inc., Xavier Contreras, and Jaime A. Contreras.

J. Scott Bennett, Law Offices of J. Scott Bennett, Lake Elsinore, CA, for defendants Panelboard Specialties Wholesale Elec., Inc., and Jaime A. Contreras.

Steven L. Smilay, Murchison & Cumming, Los Angeles, CA, for defendants AC Circuit Breaker–Electrical Supply and Joe A. Contreras.

Michael J. Emling, Moore & Rutter, Long Beach, CA, for defendants Pencon Intern., Inc., General Magnetics/Electric Wholesale, and Charley Contreras.

## ORDER RE INJUNCTION

GADBOIS, District Judge.

### I.

In 1988, plaintiff Westinghouse Electric Corporation ("Westinghouse"), sued defendants Pencon International, Inc., General Magnetics/Electric Wholesale and Charley Contreras ("Pencon Defendants"), Panelboard Specialties Wholesale Electric, Inc. and Jaime A. Contreras ("Panelboard Defendants"), AC Circuit Breaker–Electrical Supply and Joe A. Contreras ("AC Circuit Defendants"), and General Circuit Breaker & Electric Supply, Inc., Xavier Contreras, and

---

Jaime A. Contreras ("GCB Defendants") for trademark infringement, unfair competition, and state law causes of action.

A jury found that Westinghouse had established its claims for trademark counterfeiting under Section 1114 of the Lanham Act, unfair competition under Section 1125 of the Lanham Act, and unfair competition under the California Business and Professions Code. However, the jury found that defendants did not intend to deceive, and found that defendants had established the affirmative defenses of estoppel, acquiescence, laches and unclean hands to all claims. *In re Circuit Breaker Litigation,* 852 F.Supp. 883 (C.D.Cal.1994) (interpreting jury verdict).

In light of the jury's findings, this Court concluded that Westinghouse was not entitled to monetary recovery. *Id.* After further briefing on the propriety of a permanent injunction, this Court concludes that Westinghouse is also not entitled to an injunction.

## A. *Background*

Westinghouse is a major manufacturer and seller of molded case circuit breakers. Each breaker has a label bearing the Westinghouse trademark and listing information about the breaker's electrical characteristics. Some of these labels are permanent metal plates or ink-stamps; the rest are paper.

Defendants recondition and resell used Westinghouse circuit breakers. Occasionally, reconditioning requires minimal effort. At other times, defendants must replace certain components with new Westinghouse parts. Before 1988, defendants routinely replaced the breakers' seals, and also replaced faded or otherwise illegible paper labels. Westinghouse employees gave defendants some replacement labels; defendants printed the remainder themselves.

1. General Magnetics, for instance, wrote Westinghouse:

> General Magnetics has always highly valued its relationship with Westinghouse and the WESCO distribution network, and is anxious to get that relationship back on track as quickly as possible. We are thus pleased to inform you that we have immediately instituted appropriate measures to adopt labelling standards with respect to all Westinghouse products to avoid

Defendants did not add a notation to any of their breakers indicating that the breakers were reconditioned. Rather, the labels on the reconditioned breakers contained the same information as the original Westinghouse labels, including the Westinghouse trademark. These practices were no secret to Westinghouse. The jury's findings indicate that Westinghouse knew, or certainly should have known, that defendants were selling reconditioned breakers bearing the Westinghouse mark. In fact, Westinghouse itself was one of defendants' major clients, and resold defendants' reconditioned circuit breakers without labeling them "reconditioned."

In 1988, after Westinghouse objected to defendants' labelling practices, defendants offered to add new, descriptive labels to their breakers.[1] Nevertheless, Westinghouse sued, seeking damages and a permanent injunction. Although Westinghouse does not challenge defendants' *current* labelling practices, it asks this Court to order defendants to follow a specific, detailed labelling program.

## II. *Analysis*

The Lanham Act gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a registrant's rights. 15 U.S.C. § 1116(a). Although a registrant who proves infringement is ordinarily entitled to an injunction, "the grant of injunctive relief is not a ministerial act flowing as a matter of course." *Pyrodyne Corp. v. Pyrotronics Corp.,* 847 F.2d 1398, 1402 (9th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988) (quoting *United States Jaycees v. Cedar Rapids Jaycees,* 794 F.2d 379, 382 (8th Cir.1986)). Courts consider several factors, including:

> any potential confusion or misunderstanding with respect to the product which are [sic] being delivered [sic] all surplus, used and reconditioned Westinghouse breakers sold by General Magnetics will have new labels affixed to them identifying them as appropriate.

Trial Exhibit 1914. Some of the defendants added new labels before Westinghouse filed suit, while others later stipulated to a preliminary injunction requiring them to add such labels.

(A) Whether defendant established any affirmative defenses;

(B) The plaintiff's interests and motives;

(C) The burden of an injunction on the defendant;

(D) The injury which defendant has caused; and

(E) The public interest.

### A. Affirmative Defenses.

Because the Lanham Act authorizes injunctions "according to the principles of equity," 15 U.S.C. § 1116(a), courts are less willing to grant an injunction if the defendant has proven equitable defenses. *See, e.g., Pyrodyne,* 847 F.2d at 1401–03; *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 151 (5th Cir.1985) ("[T]he district court correctly denied [plaintiff's] request for injunctive relief after considering the jury's findings of laches and acquiescence."); *E–Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir.1983) ("Laches can bar recovery in trademark or tradename actions where injunctive relief is sought."); *Prudential Ins. v. Gibraltar Fin. Corp.,* 694 F.2d 1150, 1152 (9th Cir.1982), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3538, 77 L.Ed.2d 1389 (1983). In the instant case, the jury's finding of laches, equitable estoppel, acquiescence, and unclean hands militates against an injunction.

### B. Plaintiff's Interests and Motives

The Lanham Act empowers courts to issue injunctions "to prevent the violation" of the registrant's rights, 15 U.S.C. § 1116(a), not to punish innocent infringers. *See, e.g., United States Jaycees,* 794 F.2d at 383. Defendants allege that Westinghouse seeks an injunction merely to harass them. Some evidence in the record seems to support this allegation. However, without further proof, this Court will not impute a sinister motive to Westinghouse. Trademark owners often face "the horns of a dilemma" and should not be second-guessed in such facile manner:

If it [sits] back and [does] nothing, it might see its mark so cheapened ... that it lost

the last vestige of value.... On the other hand, if it embark[s] on too vigorous a campaign to protect[ ] its mark [it may be accused of improper conduct].

*Esquire, Inc. v. Esquire Slipper Mfg. Co.,* 243 F.2d 540, 545 (1st Cir.1957). Westinghouse has a genuine interest in enforcing its trademark rights.

### C. Burden of Injunction on the Defendant

A permanent injunction may be inequitable if it imposes an excessive hardship on the defendants. *See, e.g., United States Jaycees,* 794 F.2d at 382. Defendants contend that an injunction will be "[a] daily reminder that customers must not deal with [defendants] lest they risk the displeasure of the Electrical Giants [including Westinghouse]," and will therefore make them commercial pariahs. Supplemental Brief of Panelboard Defendants at 14–15 (July 8, 1994). This argument is without merit. Although an injunction might embarrass defendants, this Court doubts that it would be the scarlet letter defendants fear.

### D. The Injury Caused by Defendant

Courts are more willing to grant a permanent injunction if the infringement caused substantial injury. *See, e.g., United States Jaycees,* 794 F.2d at 382. In the instant case, Westinghouse did not prove that defendants' pre–1988 labelling practices caused actual, substantial injury. The jury only found that these practices were *likely* to cause confusion, not that they caused *actual* confusion, and Westinghouse presented little, if any, evidence of actual harm. The harm caused by defendants' infringement is not so great that an injunction is required.

### E. The Public Interest

"[A] court must expand the more frequent, one-on-one, contest-between-two sides, approach [in trademark litigation]. A third party, the consuming public, is present and its interests are paramount." *James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir.1976).[2] If the public is at risk of continued confusion, courts will

---

**2.** *See also United States Jaycees,* 794 F.2d at 382; *First Interstate Bancorp v. Stenquist,* 18 U.S.P.Q.2d (BNA) 1159, 1161, 1990 WL 299251 (N.D.Cal.1990); *E & J Gallo Winery v. Gallo* *Cattle Co.,* 12 U.S.P.Q.2d (BNA) 1657, 1676, 1989 WL 159628 (E.D.Cal.1989), *aff'd as modified,* 955 F.2d 1327 (9th Cir.1992).

often grant injunctions notwithstanding equitable defenses or the plaintiff's inequitable conduct. *See Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 193 (7th Cir.1985) ("An injunction that is otherwise appropriate may be withheld to achieve some competing objective, but not to express disapproval of the plaintiff's conduct.") (citations omitted); *Ames Pub. Co. v. Walker–Davis Pubs., Inc.*, 372 F.Supp. 1, 14–15 (E.D.Pa.1974) ("To deny an injunction on the basis that plaintiffs are also blameworthy would leave two wrongs unremedied and thereby increase the injury to the public."). Moreover, courts grant injunctions if they suspect that defendant might infringe again, even if the infringement has ceased for the moment. *See Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477, 486 (8th Cir.1967) ("[W]here a party's intentions are in doubt, as is the case here, the entry of a permanent injunction is appropriate.").[3]

If, on the other hand, the defendant infringed innocently, ceased before judgment and assured the court that it has no intention of infringing in the future, the public needs no protection. In these circumstances, courts usually deny requests for permanent injunctions. *See Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 807 (D.C.Cir.1987) ("When a defendant has ceased its infringing conduct and shows no

inclination to repeat the offense, a court may not issue an injunction.... The district court had ample reason to find that they did not intend to infringe again.").[4]

Defendants are not likely to harm the public in the future. The jury found them to be innocent infringers, and they changed their labelling practices six years ago. The jury did not find, and no evidence suggests, that defendants' *current* practices are deceptive or in any way infringe Westinghouse's trademarks. Permanent federal court supervision is not necessary to protect the public.

### III. *Conclusion*

On balance, the factors weigh against a permanent injunction. Defendants proved their equitable defenses. While Westinghouse has a genuine interest in enforcing its mark, it has not shown that defendants are likely to infringe in the future. Defendants innocently infringed, and did not substantially harm the public. They changed their labelling practices promptly, and have promised not to infringe again. The public does not need an injunction to protect it.

Not surprisingly, this Court has been unable to locate any case in which a court granted a permanent injunction even though defendant proved equitable defenses and seemed unlikely to infringe in the future. Courts uniformly conclude that an injunction

---

**3.** *See also Scotch Whiskey Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 813 (7th Cir.1973) (upholding injunction where defendant should have known of violation yet continued to sell spurious whiskey for three years); *Blisscraft v. United Plastics Co.*, 294 F.2d 694 (2nd Cir.1961); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 457, 468 (N.D.Cal.1991) ("[Defendant's] past conduct does not reasonably ensure continued adherence to its present position."); *National Geographic Soc'y v. Conde Nast Publications Inc.*, 687 F.Supp. 106, 110 (S.D.N.Y.1988) (granting injunction where defendant did not present any affirmative defenses and agreement not to infringe "came only in response to [the] lawsuit.").

**4.** *See also M–F–G Corp. v. EMRA Corp.*, 817 F.2d 410, 411 (7th Cir.1987) ("The district court withheld [injunctive] relief on the strength of [defendant's] promise.... [H]aving promised the court to desist, [defendant] has every reason to keep its pledge."); *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 773–74 (2d Cir.1984); *Henri's Food Products Co. v. Kraft, Inc.*, 717 F.2d 352, 360 (7th Cir.1983); *Schutt Mfg. Co. v. Rid-

dell, Inc.*, 673 F.2d 202, 207 (7th Cir.1982); *Knickerbocker Toy Co., Inc. v. Azrak–Hamway Int'l, Inc.*, 668 F.2d 699, 703 (2d Cir.1982); *Menendez v. Saks and Co.*, 485 F.2d 1355, 1375 (2d Cir.1973), *vacated on other grounds sub nom. Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) ("The owners argue that once the court found [infringement] an injunction was mandatory. We disagree. The grant of injunctive relief depends upon whether such relief is necessary as a matter of equity to relieve against threatened further violations."); *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir.1969); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir.1958); *Fram Corp. v. Boyd*, 230 F.2d 931, 934 (5th Cir.1956); *Wynne v. Aluminum Awning Products Co.*, 202 F.2d 130, 131 (4th Cir.1953); *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292, 326 n. 20 (E.D.Pa.1976), *rev'd in part on other grounds sub nom. Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978).

in these circumstances is unnecessary, and this Court agrees.[5] Therefore, Westinghouse's request for a permanent injunction is DENIED. The preliminary injunctions against the defendants are hereby VACATED.[6]

Defendants are now acutely aware that the law requires conspicuous and complete disclosure, by label, of their products' condition. They have assured this Court that they will continue to follow the law. Defendants have "every reason to keep [their] pledge," *M–F–G Corp.*, 817 F.2d at 411, and, in light of the jury's findings, this Court has no reason to doubt that they will.

IT IS SO ORDERED.

---

**5.** This Court has located only one case, *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513 (10th Cir.1987), in which the district court granted an injunction without suggesting that defendant might otherwise infringe in the future. The *Brunswick* defendant did not prove any equitable defenses, however.

**6.** Only the injunctions in cases 88–6025, 88–6025, 88–6739, 88–6741, and 88–6744 are hereby vacated.